Ross A. JOHNSON, Plaintiff–Appellant,

v.

CALIFORNIA STATE BOARD OF ACCOUNTANCY, et al., Defendants–Appellees.

No. 92–16433.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Submission Vacated April 19, 1994.

Resubmitted July 6, 1994.

Memorandum Filed July 25, 1995.

Decided Dec. 29, 1995.

1428

Norman C. Hile, Raul A. Ramirez, and Kathryn Doi, Orrick, Herrington & Sutcliff, Sacramento, California, for plaintiff-appellant.

Daniel E. Lungren, Atty. Gen. of the State of Cal.; Joel S. Primes, Supervising Deputy Atty. Gen., Sacramento, CA, on Briefs; Michael R. Granen, Deputy Atty. Gen., Los Angeles, CA, Oral Argument, for defendants-appellees.

Before: POOLE, BEEZER and KLEINFELD, Circuit Judges.

## ORDER

The Defendant–Appellee's request for publication pursuant to Ninth Circuit Rule 36–2 is hereby **GRANTED**. Accordingly, all third-party requests for publication are also hereby **GRANTED**. The memorandum disposition filed July 25, 1995 in the above-captioned matter is redesignated as an authored opinion by Judge Cecil F. Poole.

## OPINION

POOLE, Circuit Judge:

Ross A. Johnson appeals the district court's denial of his motion for a preliminary injunction. Johnson, who has been a certified public accountant (CPA) since 1974, sought to enjoin the California State Board of Accountancy (the Board) from investigating and disciplining him for violations of California Business and Professions Code § 5061.[1] Section 5061 prohibits those engaged in the practice of public accountancy from accepting commissions. Johnson alleges that California's prohibition on commissions is triggered by Johnson's use of constitutionally protected speech and therefore should be subject to a strict scrutiny test. Johnson argues that the district court erred in denying his motion for preliminary injunction because it erroneously applied a rational basis test rather than strict scrutiny. Because the district court correctly determined that Johnson did not have a fair chance of success on the merits, we affirm its denial of Johnson's motion for a preliminary injunction.

---

1. All statutory references herein are to California's Business and Professions Code unless otherwise noted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the facts. The Board has licensed and certified Johnson to practice public accountancy in California. The State of California has also licensed Johnson to sell real estate and insurance. The National Association of Securities Dealers has given Johnson licenses to sell securities. Johnson is affiliated with H.D. Vest Investment Securities, Inc., of Irving, Texas, a registered broker/dealer.

Johnson operates a solo accountancy practice in Sacramento, California. He regularly identifies himself as a CPA on his letterhead and business cards. Johnson does not perform audits or issue opinions requiring him to attest to the reliability, fairness, or accuracy of financial information. He regularly accepts commissions for the sale of real estate and the referral of investment products to his accounting clients.

Johnson requires all his clients to read and sign annually a letter which states that he receives cash commissions for the sale of investment securities and financial products, and that the client has no obligation to follow his recommendations. According to the Board of Accountancy, Johnson received over $40,000 in commissions during 1990–92 for the referral of investment products in limited partnerships in gas and oil leases, real estate, mortgage equipment leasing and mutual funds to his accounting clients. He also received over $29,000 in commissions during the same time period for referral of real estate products to his clients.

On July 25, 1991 the Board informed Johnson by letter that they were investigating him for possible violations of Section 5061. The parties eventually agreed to an investigatory interview in November 1991. On September 18, 1991 Johnson filed this action in the Eastern District of California. On September 20, 1991 Johnson moved for a preliminary injunction pending trial to prevent the Board from taking further investigatory or disciplinary action against him. The Board suspended action pending the district court's decision on the motion.

The district court denied the motion for a preliminary injunction on July 15, 1992 concluding that Johnson was not likely to succeed on the merits. Johnson filed this appeal on July 28, 1992. Johnson subsequently filed motions for a stay pending appeal with the district court and the court of appeals. The district court denied the motion on August 11, 1992 and this court denied the motion on August 24, 1992.

On November 9, 1992 the Board filed an Accusation against Johnson, charging him with unprofessional conduct for his violation of Section 5061. Hearings regarding the Accusation against Johnson were held before an Administrative Law Judge on June 14, June 15, July 14, July 22 and October 18, 1993.

We heard oral argument on December 14, 1993. The Supreme Court subsequently heard and decided *Ibanez v. Florida Dep't of Business and Professional Regulation, Board of Accountancy,* ⸺ U.S. ⸺, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994), the case of an attorney/accountant/financial planner reprimanded by a state accountancy board under a similar statutory scheme. We vacated submission on April 19, 1994 in order to obtain the benefit of the Supreme Court's latest decision regarding commercial speech and regulated professions. In the meantime, on June 7, 1994, the Board adopted the extensive findings of the Administrative Law Judge and decided to discipline Johnson for accepting commissions by suspending Johnson's CPA license effective July 7, 1994. After the Board denied Johnson's petition for reconsideration he filed an emergency motion for a stay and a preliminary injunction of the Board's disciplinary action. We denied Johnson's emergency motion and resubmitted the case on July 6, 1994.

## II. DISCUSSION

### A. Standard of review

The grant or denial of a motion for a preliminary injunction lies within the discretion of the district court. We will reverse "only if the district court relied on an erroneous legal premise or abused its discretion." *Sports Form, Inc. v. United Press Int'l,* 686 F.2d 750, 752 (9th Cir.1982). *See also Religious Technology Ctr., Church of Scientology*

*Int'l, Inc. v. Scott,* 869 F.2d 1306, 1309 (9th Cir.1989). Because the test for a preliminary injunction is "probable success on the merits" or "fair chance of success on the merits," our appellate decision "may provide little guidance as to the appropriate disposition on the merits." *Sports Form,* 686 F.2d at 753. Therefore, we do not reach the merits of the substantive determination of the free speech issue.

■ The question is limited to whether the district court abused its discretion in determining that Johnson's probability of success on the merits was low. *Id.* at 754. We hold that it did not.

*B. Standards for preliminary injunctive relief*

■ "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Dollar Rent A Car v. Travelers Indem. Co.,* 774 F.2d 1371, 1374 (9th Cir.1985). "Alternatively, a court may issue a preliminary injunction *if* the moving party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'"" *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 675 (9th Cir.1984) (quoting *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir.1975) (emphasis in original)). Johnson urges this panel to focus on the second part of the alternative test because the balance of hardships tips sharply in Johnson's favor. However, *Martin* explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Martin,*

740 F.2d at 675. Consequently, we focus on Johnson's chance of success on the merits by examining his constitutional claims.

*C. Probability of success on the merits.*

*1. California's accountancy regulations*

In order to evaluate Johnson's argument that the district court erred in denying his motion for a preliminary injunction, we must first analyze how California regulates accountants. California's Business and Professions Code, contains the licensing and disciplinary regulations governing the practice of accounting. *See* Cal.Bus. & Prof.Code §§ 5000–5173 (West 1990).

Except for temporary practice by certified public accountants (CPAs), public accountants (PAs), or their equivalent from another jurisdiction, California prohibits the practice of public accountancy without a valid permit from the Board. *Id.* § 5050. Permits expire regularly every other year unless renewed. *Id.* § 5070.5 In order to receive the Board's certification as a certified public accountant a person must fulfill demanding educational and professional experience requirements (§§ 5081, 5081.1, 5083), as well as pass a certified public accountancy examination. *Id.* § 5082. After notice and hearing the Board has power to revoke, suspend, or refuse to renew any permit or certificate which it grants, or censure the holder of such a permit or certificate for unprofessional conduct. *Id.* § 5100. Unprofessional conduct includes "[w]illful violation of this chapter or any rule or regulation promulgated by the board under the authority granted under this chapter." *Id.* § 5100(f).

The Board has disciplined Johnson under Section 5061, which requires that "[n]o person engaged in the practice of public accountancy shall pay a commission to obtain a client, nor shall that person accept a commission for a referral to a client of products or services of others."

Section 5051 defines the practice of public accountancy.[2] Section 5051 has nine subdivi-

---

2. Following is the entire text of Section 5051:
§ 5051. Practice of public accountancy
   Except as provided in Sections 5052, 5053, and 5054, a person shall be deemed to be en-

gaged in the practice of public accountancy within the meaning and intent of this chapter if he or she does any of the following:

sions labelled (a) through (i), which describe various activities. Participation in any one of the activities described in subdivisions 5051(a) through 5051(e) is sufficient to find that someone is engaged in the practice of public accountancy. Participation in any one of the activities described in subdivisions 5051(f) through 5051(i) is *not* sufficient to find that someone is engaged in the practice of public accountancy unless that person also holds himself or herself out as a CPA or a PA. Holding oneself out as a CPA or PA appears to be the substantial equivalent of the sufficient activity described in subdivision 5051(a). In other words, holding oneself out as a CPA or PA is a necessary condition for finding that those participating in activities described in subdivisions 5051(f) through 5051(i) are engaged in the practice of public accountancy; however, merely holding oneself out is sufficient in itself.

California's statutory scheme appears to serve a specific purpose. The activities described in subdivisions 5051(f) through 5051(i) are bookkeeping, tax return preparation, financial and investment planning, and management consulting. By including subdivisions 5051(f) through 5051(i) in the list of activities which constitute the practice of

public accountancy, the legislature recognized that trained and certified accountants are increasingly called on to perform a wide range of financial services for their clients. By defining these activities in subdivisions 5051(f) through 5051(i) as the practice of public accounting only if a person performing them also holds himself or herself out as a CPA or a PA, the legislature further recognized that non-accountants regularly perform bookkeeping, tax return preparation, financial and investment planning, and management consulting. The legislature obviously did not want to bring every bookkeeper, tax lawyer, financial planner, and management consultant in the state under the accounting regulations.

Contrary to Johnson's argument, Section 5051 does not create two separate classes of accountants on the basis of constitutionally protected speech. The distinction between the activities described in subdivisions 5051(a) through 5051(e) and those described in subdivisions 5051(f) through 5051(i) simply serves to exempt from the rigorous accountancy regulations those non-accountants who perform only the particular financial services noted in subdivisions 5051(f) through 5051(i),

(a) Holds himself or herself out to the public in any manner as one skilled in the knowledge, science and practice of accounting, and as qualified and ready to render professional service therein as a public accountant for compensation.

(b) Maintains an office for the transaction of business as a public accountant.

(c) Offers to prospective clients to perform for compensation, or who does perform on behalf of clients for compensation, professional services that involve or require an audit, examination, verification, investigation, certification, presentation, or review, of financial transactions and accounting records.

(d) Prepares or certifies for clients reports on audits or examinations of books or records of account, balance sheets, and other financial, accounting and related schedules, exhibits, statements, or reports which are to be used for publication or for the purpose of obtaining credit or for filing with a court of law or with any governmental agency, or for any other purpose.

(e) In general or as an incident to that work, renders professional services to clients for compensation in any or all matters relating to accounting procedure and to the recording, presentation, or certification of financial information or data.

(f) Keeps books, makes trial balances, or prepares statements, makes audits, or prepares re-

ports, all as a part of bookkeeping operations for clients.

(g) Prepares or signs as the tax preparer, tax returns for clients.

(h) Prepares personal financial or investment plans or provides to clients products or services of others in implementation of personal financial or investment plans.

(i) Provides management consulting services to clients.

The activities set forth in subdivisions (f) to (i), inclusive, are "public accountancy" only when performed by a certified public accountant or public accountant, as defined in this chapter.

A person is not engaged in the practice of public accountancy if the only services he or she engages in are those defined by subdivisions (f) to (i), inclusive, and he or she does not hold himself or herself out, solicit, or advertise for clients using the certified public accountant or public accountant designation. A person is not holding himself or herself out, soliciting or advertising for clients within the meaning of this section solely by reason of displaying a CPA or PA certificate in his or her office or identifying himself or herself as a CPA or PA on other than, signs, advertisements, letterhead, business cards, publications directed to clients or potential clients, or financial or tax documents of a client.

and who do not claim to be accountants in their "signs, advertisements, letterhead, business cards, publications directed to clients or potential clients, or financial or tax documents of a client." *Id.* § 5051. At the same time, it requires those accountants who want to perform these other financial services and continue to hold themselves out as accountants to adhere to California's numerous regulations regarding public accountancy.[3]

### 2. Protected speech or conduct

Johnson argues that holding oneself out as a CPA is constitutionally protected speech and that to deny someone commissions simply because he or she holds himself or herself out as a CPA unconstitutionally burdens a first amendment right.

Unlike the constitutionally infirm statutes in the cases cited by Johnson, Section 5051's "holding out" provisions do not ban dissemination of commercial information. Johnson cites *Peel v. Attorney Registration and Disciplinary Comm'n,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), *Abramson v. Gonzalez,* 949 F.2d 1567 (11th Cir.1992), and *Parker v. Kentucky, Bd. of Dentistry,* 818 F.2d 504 (6th Cir.1987) for the proposition that "holding out" is commercial speech protected by the First Amendment.

*Peel* invalidated as applied an Illinois statute that prohibited an attorney from holding himself out as certified or as a specialist in any area other than patent, trademark and admiralty. The attorney who successfully challenged the statute had letterhead noting his certification as a Civil Trial Specialist from the National Board of Trial Advocacy. The plurality held that the state could not completely ban from commercial discourse statements that are not actually or inherently misleading "such as certification as a specialist by bona fide organizations." 496 U.S. at

110, 110 S.Ct. at 2293 (opinion of Stevens, J.). Justice Marshall's concurrence would permit a state to enact regulations other than a total ban on potentially misleading statements. *Id.* at 111, 110 S.Ct. at 2293.

In *Abramson,* the Eleventh Circuit held that as long as Florida permitted unlicensed psychologists to practice psychology it could not ban them from identifying or holding themselves out as such in their commercial speech. 949 F.2d at 1575–76.

In *Parker,* the Sixth Circuit held that as long as Kentucky permitted general practitioner dentists to perform orthodontic and other specialized procedures it could not ban general practitioners from holding themselves out in their commercial speech as providing orthodontics or other specialized procedures if done in a way which did not deceive. 818 F.2d at 509–510.

The "holding out" statutes implicated in *Peel, Abramson,* and *Parker* are analytically distinct from the "holding out" provisions in Section 5051. In those prior cases "holding out" or its equivalent was used to ban the dissemination of commercial information. The Illinois Code of Professional Responsibility, Rule 2–105(a)(3) stated that "no lawyer may hold himself out as 'certified' or a 'specialist'" (*cited in Peel,* 496 U.S. at 97, 110 S.Ct. at 2286). The Florida statute in *Abramson* stated that "No person shall hold himself out [as a psychologist] . . . unless such person holds a valid active license under this chapter . . ." Fla.Stat.Ann. § 490.012(1)(a) (West 1994). The Kentucky statute in *Parker* stated that "No licensed dentist shall hold himself out to the public as being especially qualified in any branch of dentistry . . ." Ky.Rev.Stat.Ann. § 313.410 (Michie 1993).

Section 5051 imposes no such ban. It uses the equivalent of the phrase "holding out" to

---

**3.** Those practicing "public accountancy" are subject not only to a prohibition on commissions (§ 5061), but also to continuing education requirements (§ 5026, 5028), licensing requirements (§ 5050), which include registration and fees (§ 5070), limitations on the ability to form business partnerships (§ 5072), and separate and distinct administrative discipline for dishonesty, fraud, or gross negligence (§ 5100(c)). This non-exhaustive list refers only to statutes which explicitly use the term "public accountancy" in the literal way Johnson does.

Johnson makes much of the fact that holding oneself out does not refer to displaying a CPA or PA certificate in an office, or advertising ones qualifications by word-of-mouth. *See id.* § 5051 (last paragraph). The fact that California has not sealed off every avenue for accountants who do not undertake the rigorous requirements of the public accounting regulations to share their state-endowed credential does not create a constitutional deficiency.

identify and define conduct indicative of the practice of public accountancy (e.g., "a person shall be deemed to be engaged in the practice of public accountancy ... if he or she ... [h]olds himself or herself out to the public in any manner as one skilled in the knowledge, science, and practice of accounting"). Section 5051 does not ban any commercial information. Under the provisions of Section 5051, as long as Johnson has not been disciplined for violations of the substantive provisions of California's accountancy regulations, he can identify himself in advertising and letterhead as a CPA, and as licensed to sell real estate, insurance, and securities. Reading Sections 5051 and 5061 together, however, what Johnson is not permitted to do is to use his various professional licenses to engage in commission-yielding transactions that create a conflict between his interests and those of his client.

We do not review Johnson's arguments regarding the use of a strict scrutiny standard rather than the rational basis one employed by the district court, because we do not reach the merits of his argument. However, based on the foregoing discussion, we hold that the district court did not abuse its discretion in deciding that the probability of success on the merits was low. Therefore, the denial of Johnson's motion for a preliminary injunction is **AFFIRMED**.