344 F.3d 914
 SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; Southern Christian Leadership Conference of Greater Los Angeles; National Association for the Advancement of Colored People; California State Conference of Branches, Plaintiffs-Appellants,
v.
Kevin SHELLEY, in his official capacity as California Secretary of State, Defendant-Appellee,
Ted Costa, Intervenor-Appellee.
 No. 03-56498.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted En Banc September 22, 2003 — San Francisco, California.
 Filed September 23, 2003.
 
 Mark D. Rosenbaum (argued), Peter J. Eliasberg, Ben Wizner, Catherine Lhamon, Ranjana Natarajan, Danile P. Tokaji: ACLU Foundation of Southern California, Los Angeles, CA; Erwin Chemerinsky: University of Southern California Law School, Los Angeles, CA; Laurence Tribe (argued), Cambridge, Massachusetts, MA; Jordan Budd, ACLU of San Diego & Imperial Counties, San Diego, CA; Alan L. Schlosser and Margaret C. Crosby: ACLU Foundation of Northern California, San Francisco, CA; John C. Ulin and Jilana L. Miller, Heller Ehrman White & McAuliffe, LLP, Los Angeles, CA; Neal Katyal, Washington, DC; Thomas C. Goldstein, Goldstein & Howe, P.C., Washington, DC; attorneys for Plaintiffs-Appellants.
 Bill Lockyer, Andrea L. Hoch, Louise R. Mauro, Kenneth R. Williams, Douglas J. Woods (argued), Susan R. Oie, Office of the Attorney General of California, Sacramento, CA; attorneys for Defendant-Appellee.
 Charles P. Diamond (argued), Robert M. Schwartz, Robert C. Welsh, Victor H. Jih, Los Angeles, CA; Charles H. Bell, Thomas W. Hitachk: Bellow, McAndrews, Hitachk & Davidian LLP, Sacramento, CA; attorneys for Intervenor-Appellee.
 Appeal from the United States District Court for the Central District of California; Stephen V. Wilson, District Judge, Presiding. D.C. No. CV-03-05715-SVW.
 Before: SCHROEDER, Chief Judge, KOZINSKI, O'SCANNLAIN, KLEINFELD, TASHIMA, SILVERMAN, GRABER, McKEOWN, GOULD, TALLMAN, and RAWLINSON, Circuit Judges.
 OPINION
 PER CURIAM.
 
 
 1
 This matter has been reheard by the United States Court of Appeals for the Ninth Circuit, sitting en banc, upon the vote of a majority of the non-recused active judges pursuant to 28 U.S.C. § 46(c) and Federal Rule of Appellate Procedure 35. We thank all the parties and their counsel, as well as the amici, for the prompt and professional presentations to this court on an expedited basis.
 
 BACKGROUND
 
 2
 The following summary is largely adopted from the district court's order denying a preliminary injunction.
 
 
 3
 On October 7, 2003, California voters are scheduled to decide whether Governor Gray Davis should be recalled and, if so, who should replace him. Also on the ballot are two statewide initiatives: Proposition 53, a proposed constitutional amendment sponsored by the state legislature that would require a portion of the state's budget be set aside for infrastructure spending; and, Proposition 54, a measure that would ban government agencies from collecting certain racial information. The state was to begin mailing absentee ballots 29 days before the election. See Cal. Elec. Code § 3001. Absentee voters must return the ballots prior to the close of the polls on election day. Cal. Elec.Code § 3020.
 
 
 4
 Plaintiffs, Southwest Voter Registration Education Project, Southern Christian Leadership Conference of Greater Los Angeles, National Association for the Advancement of Colored People, and California State Conference of Branches, filed this lawsuit alleging that the planned use of "punch-card" balloting machines in the election violates the Equal Protection Clause of the U.S. Constitution and Section 2 of the Voting Rights Act (codified at 42 U.S.C. § 1973).
 
 
 5
 Under the California Constitution, the Lieutenant Governor is charged with setting the date of a gubernatorial recall. See Cal. Const. art. II, § 17. The state constitution requires that the election be held not less than 60 days and not more than 80 days from the date of the certification by the Secretary of State that there were sufficient signatures to initiate a recall, which in this case was July 23, 2003. Cal. Const. art. II, § 15(a). The only exception to this time frame applies where a regular election is already scheduled to be held within 180 days of the date of certification. See Cal. Const. art. II, § 15(b). In that circumstance, the recall election may be consolidated with the regularly scheduled election. Id.
 
 
 6
 Because the next regularly scheduled election is to be held in March of 2004 — more than seven months from the date of certification — the 60 to 80 day time frame applies. Accordingly, Lieutenant Governor Cruz Bustamante signed a proclamation on July 24, 2003, ordering that the recall election take place on October 7, 2003 (the last Tuesday within the allotted period).
 
 
 7
 Under the California Constitution, the Secretary of State is charged with setting the date for an initiative election. See Cal. Const. art. II, § 8(c). The constitution requires that a vote on an initiative be scheduled "at the next general election held at least 131 days after it qualifies or at any special statewide election held prior to the general election." See id. Initially, in 2002, the Secretary of State scheduled the election on the initiatives for the 2004 election. On July 25, 2003, the Secretary of State rescheduled the initiative election to the same date as the recall election.
 
 
 8
 Plaintiffs filed this lawsuit on August 7, 2003, to delay the election until it could be conducted without use of pre-scored punch-card balloting machines. Plaintiffs allege that punch-card machines result in an average combined "residual vote rate" of 2.23%. Residual votes consist of "overvotes" (ballots disqualified because they are read by the machine as containing more than one vote on a single candidate contest or initiative issue) and "undervotes" (ballots read by the machine as not containing a vote). While residual votes may be caused by factors other than machine error — including a voter's affirmative choice not to vote on any particular candidate or initiative — plaintiffs allege that the residual vote rate of punch-card machines is, on average, twice that experienced when other voting technologies are used. The California Secretary of State decertified punch-card machine use in elections after January 1, 2006. Later, in a consent decree, the Secretary agreed to accelerate the effective date of the decertification to March 2004.
 
 
 9
 Plaintiffs claim that their right to equal protection is violated because voters in counties that use punch-card machines will have a comparatively lesser chance of having their votes counted than voters in counties that use other technologies. Further, plaintiffs allege that the counties employing punch-card systems have greater minority populations than counties using other voting systems, so that punch-card use denies the right to vote on the basis of race, in violation of Section 2 of the Voting Rights Act (codified at 42 U.S.C. § 1973).
 
 
 10
 The district court denied the injunction on August 20, 2003. Plaintiffs' appeal to this court was argued on an expedited basis, pursuant to Circuit Rule 3-3(a), to a three-judge motions panel on September 11, 2003. On September 15, 2003, the panel granted an injunction that postponed the election. The panel stayed its order to enable this en banc reconsideration or Supreme Court review.
 
 
 11
 The three-judge panel analyzed the merits of the equal protection claim and concluded plaintiffs had shown a substantial likelihood of success. The panel applied the Supreme Court's decision in Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (per curiam). In accordance with our standard for reviewing a denial of a preliminary injunction, the panel considered the harm to each party and the public interest. See Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir.1995). The panel reversed the district court's denial of an injunction. That opinion was withdrawn upon our vote to rehear the case en banc. 2003 WL 22119858 (9th Cir. Sept.15, 2003).
 
 STANDARD OF REVIEW
 
 12
 The standard of review is important to our resolution of this case. A preliminary injunction is appropriate where plaintiffs demonstrate "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [their] favor." Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir.2003) (quoting Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir.1999)). The district court must also consider whether the public interest favors issuance of the injunction. Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir.1992); see also Chisom v. Roemer, 853 F.2d 1186, 1189 (5th Cir.1988). This alternative test for injunctive relief has also been formulated as follows: a plaintiff is required to establish "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff[s] if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff[s], and (4) advancement of the public interest (in certain cases)." Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir.1995) (internal quotation marks omitted). This analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor. Fund for Animals, Inc., 962 F.2d at 1400.
 
 
 13
 We review the district court's decision to grant or deny a preliminary injunction for abuse of discretion. Walczak v. EPL Prolong, Inc., 198 F.3d 725, 730 (9th Cir.1999). Our review is limited and deferential. The district court's interpretation of the underlying legal principles, however, is subject to de novo review and a district court abuses its discretion when it makes an error of law. Bay Area Addiction Research & Treatment, Inc. v. City of Antioch, 179 F.3d 725, 730 (9th Cir.1999). Thus we have held that an order "will be reversed only if the district court relied on an erroneous legal premise or abused its discretion." Sports Form, Inc. v. United Press Int'l., Inc., 686 F.2d 750, 752 (9th Cir.1982). "[W]e do not review the underlying merits of the case." Gregorio T. v. Wilson, 59 F.3d 1002, 1004 (9th Cir.1995).
 
 DISCUSSION
 
 14
 We are met with legal authority on both sides of the contest. There is no doubt that the right to vote is fundamental, but a federal court cannot lightly interfere with or enjoin a state election. See, e.g., Reynolds v. Sims, 377 U.S. 533, 555, 585, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). The decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation. See, e.g., Ely v. Klahr, 403 U.S. 108, 113, 115, 91 S.Ct. 1803, 29 L.Ed.2d 352 (1971); Whitcomb v. Chavis, 396 U.S. 1055, 90 S.Ct. 748, 24 L.Ed.2d 757 and 396 U.S. 1064, 90 S.Ct. 761, 24 L.Ed.2d 757 (1970); Kilgarlin v. Hill, 386 U.S. 120, 121, 87 S.Ct. 820, 17 L.Ed.2d 771 (1967) (per curiam).
 
 
 15
 We have not previously had occasion to consider the precise equal protection claim raised here. That a panel of this court unanimously concluded the claim had merit provides evidence that the argument is one over which reasonable jurists may differ. In Bush v. Gore, the leading case on disputed elections, the court specifically noted: "The question before the Court is not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. at 109, 121 S.Ct. 525. We conclude the district court did not abuse its discretion in holding that the plaintiffs have not established a clear probability of success on the merits of their equal protection claim.
 
 
 16
 Plaintiffs have made a stronger showing on their Voting Rights Act claim. In a nutshell, plaintiffs argue that the alleged disparate impact of punch-card ballots on minority voters violated Section 2 of the Act, 42 U.S.C. § 1973. Plaintiffs allege that minority voters disproportionately reside in punch-card counties and that, even within those counties, punch-card machines discard minority votes at a higher rate. To establish a Section 2 violation, plaintiffs need only demonstrate "a causal connection between the challenged voting practice and [a] prohibited discriminatory result." Smith v. Salt River Project Agric. Improvement & Power Dist., 109 F.3d 586, 595 (9th Cir.1997) (internal quotation marks omitted). There is significant dispute in the record, however, as to the degree and significance of the disparity. Thus, although plaintiffs have shown a possibility of success on the merits, we cannot say that at this stage they have shown a strong likelihood.
 
 
 17
 We therefore must determine whether the district court abused its discretion in weighing the hardships and considering the public interest. In this case, hardship falls not only upon the putative defendant, the California Secretary of State, but on all the citizens of California, because this case concerns a statewide election. The public interest is significantly affected. For this reason our law recognizes that election cases are different from ordinary injunction cases. See, e.g., Reynolds v. Sims, 377 U.S. at 585, 84 S.Ct. 1362. Interference with impending elections is extraordinary, id., and interference with an election after voting has begun is unprecedented.
 
 
 18
 If the recall election scheduled for October 7, 2003, is enjoined, it is certain that the state of California and its citizens will suffer material hardship by virtue of the enormous resources already invested in reliance on the election's proceeding on the announced date. Time and money have been spent to prepare voter information pamphlets and sample ballots, mail absentee ballots, and hire and train poll workers. Public officials have been forced to divert their attention from their official duties in order to campaign. Candidates have crafted their message to the voters in light of the originally-announced schedule and calibrated their message to the political and social environment of the time. They have raised funds under current campaign contribution laws and expended them in reliance on the election's taking place on October 7. Potential voters have given their attention to the candidates' messages and prepared themselves to vote. Hundreds of thousands of absentee voters have already cast their votes in similar reliance upon the election going forward on the timetable announced by the state. These investments of time, money, and the exercise of citizenship rights cannot be returned. If the election is postponed, citizens who have already cast a vote will effectively be told that the vote does not count and that they must vote again. In short, the status quo that existed at the time the election was set cannot be restored because this election has already begun.
 
 
 19
 We recognize that there may be a stronger case on the merits for delaying the initiatives than the recall, because the initiatives were originally scheduled to be voted upon in March 2004 and would not take effect until at least 2005, while the result of the recall would be immediate. Because votes are already being cast on both the recall and the initiatives, however, moving the initiatives to a later election creates the same problem as moving the recall; an election would be halted after it has already begun. Although the claimed state electoral law violations do implicate the public interest, and the voters and ballot proponents anticipated a later election based on earlier certification, we cannot say that the district court abused its discretion in balancing the harms. Finally, we are reluctant to intercede in ballot timing of the initiatives, an electoral matter that falls within the province of the state to determine. See Takash v. Superior Court (Shelley), 2003 Cal. LEXIS 6618 (Cal.Sup.Ct. Sept. 3, 2003).
 
 
 20
 We must of course also look to the interests represented by the plaintiffs, who are legitimately concerned that use of the punch-card system will deny the right to vote to some voters who must use that system. At this time, it is merely a speculative possibility, however, that any such denial will influence the result of the election.
 
 
 21
 For these reasons, the district court did not abuse its discretion in concluding that plaintiffs will suffer no hardship that outweighs the stake of the State of California and its citizens in having this election go forward as planned and as required by the California Constitution.
 
 
 22
 The judgment of the district court is AFFIRMED. The Clerk is directed to issue the mandate forthwith.