Sharon NEWTON–NATIONS, Manuela Gonzalez, Cheryl Bilbrey, Donald McCants, Hector Martinez, Anne Garrison, Dawn House, Dana Franklin, Edward Bonner, D.H., Jack Baumhardt, Manuel Esparza and Patricia Jones, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Anthony ROGERS, Director of the Arizona Health Care Cost Containment System, and Tommy Thompson, Secretary of the United States Department of Health and Human Services, in their official capacities, Defendants.

No. CIV 03–2506–PHX–EHC.

United States District Court,
D. Arizona.

April 21, 2004.

Martha Jane Perkins, National Health Law Program, Chapel Hill, NC, Sally Hart, Arizona Center for Disability Law, Tucson, AZ, Ellen Sue Katz, William E. Morris Institute for Justice, Phoenix, AZ, for Plaintiffs.

Logan T. Johnston, III, Esq., Johnston Law Offices PLC, Michael A. Johns, Esq., U.S. Attorney's Office, Phoenix, AZ, Sheila Lieber, Esq., Diane Kelleher, U.S. Dept of Justice, Washington, DC, for Defendants.

## PRELIMINARY INJUNCTION ORDER

CARROLL, District Judge.

Pending before the Court is Plaintiffs' Motion for a Preliminary Injunction.

[Dkt. 10]. Defendant Rodgers filed a Response on February 12, 2004. [Dkt. 22]. Defendant Thompson filed a Response on March 5, 2004. [Dkt. 32]. Plaintiffs filed Replies on February 18, 2004, and on March 10, 2004. [Dkt. 25, 38].

## Background

Plaintiffs are "low income Arizona residents who receive medical assistance through Arizona's Medicaid program, the Arizona Health Care Cost Containment System("AHCCCS")." [Dkt. 19]. On March 17, 2004, the Court granted Plaintiffs' Motion for Class Certification and defined the class members as "all [AHCCCS] eligible persons in Arizona who have been or will be charged copayments pursuant to Arizona Administrative Code Amended Rule R9–22–711(E)[1]." [Dkt. 42](footnote not in original).

Defendant Tommy Thompson, named in his official capacity, is the Secretary of the United States Department of Health and Human Services and is responsible for administering the federal Medicaid program. [Dkt. 1; ¶ 20]. Arizona participates in the federal Medicaid program[2] through the AHCCCS. [Dkt. 19; 32]. Defendant Anthony Rodgers, named in his official capacity, is the Director of the [AHCCCS], and is responsible for administering the Medicaid program in Arizona. [Dkt. 1 ¶ 21; 29 ¶ 21].

The AHCCCS was created in 1982 after it was approved by the United States Department of Health and Human Services.[3] [Dkt. 1 ¶ 28; 29 ¶ 28; 32]. In January 2001, pursuant to 42 U.S.C. § 1315, Defendant Thompson granted Arizona and AHCCCS permission to waive the State plan requirements listed in 42 U.S.C. § 1396a in order to create a demonstration project. [Dkt. 32, Exh. 1]. The demonstration project extended AHCCCS to: (1) persons who have incomes below 100% of federal poverty level; and (2) persons who incur medical expenses sufficient to reduce monthly incomes to 40 percent of federal poverty level. [Dkt. 19; 32]; 42 U.S.C. 1315.

Plaintiffs allege that on May 2, 2003, AHCCCS again sought waiver from Defendant Thompson under 42 U.S.C. § 1315, to increase the copayments

---

**1.** Amended AAC R9–22–711(E), provides:

Unless otherwise listed in subsection (B), (C) or (D) the following individuals are required to pay the copayments listed in this subsection. The provider may deny a service if the member does not pay the required copayment.

1. An individual whose income is under 100% of the Federal Poverty Level in A.R.S. § 36–2901.01, or

2. An individual eligible for the Medical Expense Deduction program in A.R.S. § 36–2901.04.

Covered Services

| | |
|---|---|
| Generic prescriptions or brand name prescriptions if generic is not available | $ 4.00 per prescription |
| Brand name prescriptions when generic is available | $10.00 per prescription |
| Nonemergency use of the emergency room. | $30.00 per visit |
| Physician office visit | $ 5.00 per office visit |

**2.** 42 U.S.C. § 1396 *et seq.*

**3.** Plaintiffs allege and Defendant Rodgers does not dispute that AHCCCS was initiated after the U.S. Department of Health and Human Services "granted Arizona an 'experimental, pilot, or demonstration project' waiver, pursuant to 42 U.S.C. § 1315(a)[]." [Dkt. 1 ¶ 28; 29 ¶ 28]. Defendant Thompson's argument is unclear as to his position on the origin of AHCCCS. *See e.g.* [Dkt. 32]. However, a review of 42 U.S.C. § 1396a in light of the Supreme Court's holding in *Pharmaceutical Research and Mfrs. of America v. Walsh,* 538 U.S. 644, 650, 123 S.Ct. 1855, 1861, 155 L.Ed.2d 889 (2003), *infra,* indicates AHCCCS was initially created as a State plan within the bounds of the federal Medicaid Act. *See* 42 U.S.C. § 1396a; *Walsh,* 538 U.S. 644, 123 S.Ct. 1855, 155 L.Ed.2d 889.

charged Plaintiffs for medical services. [Dkt. 19]. Plaintiffs allege that Defendant Thompson informed AHCCCS it did not need a waiver to increase copayments because the copayment information "could be included in a new section on cost sharing to be added to [AHCCCS'] financial operational protocol. The operational protocol is a document, prepared by the State and approved by [Defendant Thompson], that represents all policies and operating procedures applicable to the demonstration waiver." *Id.* (internal quotation marks omitted). As a result of the information provided by Defendant Thompson, Plaintiffs allege that on October 1, 2003, Defendant Rodgers, with the permission of Defendant Thompson, implemented amended Arizona Administrative Code ("AAC") R9–22–711(D) and (E). [Dkt. 1, ¶ 2]. Plaintiffs allege that the amended rule "requires certain Medicaid-eligible Arizonans to pay copayments that exceed the limited, 'nominal' copayments authorized by the federal Medicaid Act." *Id.* Plaintiffs further allege that the amended rule "also allows health care providers to deny care and services to Medicaid beneficiaries who are unable to pay the copayment, in violation of federal the Medicaid Act." *Id.*

On December 19, 2003, Plaintiffs filed this Complaint against Defendant Rodgers and Defendant Thompson alleging that Defendant Thompson's action authorizing Arizona to implement copayments: (1) exceeded his limited authority under 42 U.S.C. § 1315 and 1396o; (2) failed to comport to the human protections required by 42 U.S.C. § 3515b; and (3) that these actions were done in an arbitrary and capricious fashion. [Dkt. 1]. The Complaint further alleges that Defendant Rodgers' imposition of the increased copayments in AAC R9–22–711(D) and (E) are: (1) contrary to 42 U.S.C. § 1396o, and preempted by the Supremacy Clause of the U.S. Constitution; (2) in violation of the Due Process Clause of the Fourteenth Amend-

ment; and (3) contrary to 42 U.S.C. § 1396a(a)(3). [Dkt. 1].

On January 26, 2004, Plaintiffs filed a Motion for a Preliminary Injunction seeking to enjoin Defendant Rodgers from: (1) imposing copayments on Plaintiffs that exceed the nominal amounts allowed under 42 U.S.C. §§ 1396o(a)(3), (b)(3), and 42 C.F.R. § 447.54; and (2) from allowing providers to deny medical services to Plaintiffs and the class because of the inability of these AHCCCS participants to pay the copayments in violation of 42 U.S.C. § 1396o(e). [Dkt. 19]. Plaintiffs also request that the Court not to impose a bond. *Id.* This Motion is now fully briefed. *See* [Dkt. 22, 25, 32, 38, 49, 50].

**Preliminary Injunction Standard**

The Ninth Circuit has held that "[t]o obtain a preliminary injunction in the district court, plaintiffs [are] required to demonstrate '(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff[s] if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff[s], and (4) advancement of the public interest (in certain cases).'" *Rodde v. Bonta,* 357 F.3d 988, 994 (9th Cir.2004) (*quoting Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995)). "Alternatively, injunctive relief could be granted if the plaintiffs 'demonstrate[d] *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in [their] favor.'" *Id.* (*quoting Johnson,* 72 F.3d at 1430)(internal quotation marks omitted). "These two alternatives represent extremes of a single continuum, rather than two separate tests...." *Id.* (*quoting Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir.2003)). "Thus, the greater the relative hardship to [the party seeking the preliminary injunc-

tion,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813. "In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Rodde*, 357 F.3d at 994.

### Plaintiffs' Motion for Preliminary Injunction

Plaintiffs argue that they are entitled to a preliminary injunction because: (1) they are suffering irreparable harm as a result of the increased cost in medical services; (2) they are likely to succeed on the merits because AAC R9–22–711(E) "clearly violates the Medicaid Act's nominality requirements for copayments and the Act's prohibition against allowing health care providers to deny services to those who cannot meet the copayments"; and (3) that the balance of hardships strongly favors Plaintiffs because the potential injury to Plaintiffs and the class members outweighs any potential injury to Defendant Rodgers. [Dkt. 19].

On February 12, 2004, Defendant Rodgers filed his Response to Plaintiffs' Motion arguing that Plaintiffs are unable to show a likelihood of success on the merits because: (1) higher copayments were approved by Defendant Thompson; (2) that 42 U.S.C. § 1396o does not apply because it applies only to Title XIX populations, not a demonstration program. [Dkt. 22]. Defendant Rodgers' Response also states that "[t]he balance of hardships weighs somewhat in favor of the 13 plaintiffs, but not enough, we submit, to overcome the lack of likelihood of success on the merits." *Id.* Plaintiffs filed a Reply to Defendant Rodgers' Response on February 18, 2004. [Dkt. 25].

On March 2, 2004, Defendant Thompson filed his Response alleging that Plaintiffs are unable to show a likelihood of success on the merits because: (1) 42 U.S.C. § 1396o does not apply to Plaintiffs because they are part of an expansion population and not covered under the Arizona Medicaid State plan; (2) 42 U.S.C. § 1396o(f) was not violated because it does not apply to Plaintiffs; (3) 42 U.S.C. § 1396o(e) was not violated because it does not apply to Plaintiffs; (4) the action in approving Arizona's demonstration program was lawful and does not present a danger to the participants. *Id.* Defendant Thompson argues that Plaintiffs are unable to demonstrate irreparable harm because: (1) they are not entitled to health care services because Arizona has *chosen* to operate a demonstration project that includes them; (2) that if Plaintiffs receive the relief sought, it will leave some Plaintiffs worse off because the relief will deprive the AHCCCS of income, causing the state to reduce the services offered; (3) that the economic loss felt by Plaintiffs in the form of an increased copayment is insufficient to prove irreparable injury; and (4) that Plaintiffs' arguments for a preliminary injunction are undermined because the copayment challenged by Plaintiffs went into effect on October 1, 2003, and was not challenged until the end of January, 2004. *Id.* Defendant Thompson further argues that the balance of hardships do not tip in the favor of Plaintiffs because: (1)"enjoining Arizona from collecting co-payments from AHCCCS expansion populations jeopardizes the state's ability to continue providing expanded health care services for AHCCCS expansion populations;" (2) "the imposition of a program-wide, state-wide injunction against Arizona—and the disruption such an injunction would create—is unwarranted where plaintiffs have no chance of success on the merits"; (3) that a class wide injunction would be overbroad; and (4) that the public interest will not be furthered by the grant of an injunction. [Dkt. 32]. Plaintiff filed a Reply on March

10, 2004, and Defendant Thompson filed a Sur–Reply on April 2004. [Dkt. 38; 49].

### 1. Irreparable Injury

■■■ Under either of the Ninth Circuit's tests for a preliminary injunction, "the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Big Country Foods, Inc. v. Board of Educ. of Anchorage School Dist., Anchorage Alaska,* 868 F.2d 1085, 1088 (9th Cir.1989). The Ninth Circuit has found irreparable injury established by a showing that plaintiffs may be denied medical care. *Beltran v. Meyers,* 677 F.2d 1317, 1322 (9th Cir. 1982).

ACC R9–22–711(E) authorizes medical service providers to deny services to Plaintiffs if they are unable to pay the increased copayment. *See* AAC R9–22–711(E). Because Plaintiffs may be denied medical care, Plaintiffs have demonstrated irreparable injury. *Beltran,* 677 F.2d at 1322.

### 2. Balance of Hardships

■■■ When "[b]alancing the medical or financial hardship to the plaintiffs [ ] against the financial hardship to the state resulting from its inability to recover for medical services should its rules ultimately be held valid, it was not an abuse of discretion for the district judge to find that the balance of hardships tipped sharply in favor of plaintiffs." *Id.* Further, the Ninth Circuit has found that when "[f]aced with[ ] a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Rodde,* 357 F.3d at 999(*quoting Lopez v. Heckler,* 713 F.2d 1432, 1437 (9th Cir.1983)).

Plaintiffs' Memorandum in Support of their Motion includes declarations from: (1) twelve named Plaintiffs; (2) four class members; (3) a Case Manager with HIV Directions in Maricopa County, Arizona; and (4) a Case Management Supervisor at the Central Arizona Shelter Services program in Maricopa County, Arizona. [Dkt. 19]. These declarations all attest to the financial plight and the serious medical conditions of Plaintiffs. *Id.* Defendant Thompson argues in its Response that the State may suffer financial hardship if the Court enjoins enforcement of AAC R9–22–711(E).[4] However, Defendant Thompson's argument is unpersuasive because Defendant Rodgers implemented AAC R9–22–711(E) on October 1, 2003, after providing medical services to Plaintiffs at the lower copayments since January 2001. [Dkt. 32, Exh. 1; 38]. Further, any financial concerns on the part of the State are outweighed by the increased copayments listed in AAC R9–22–711(E) because they require Plaintiffs to bear increased medical bills and to balance those increased costs with their living expenses. *See Id.;* [Dkt. 19]. Because Plaintiffs have multiple medical costs, scarce financial resources, and due to the fact that they have relied on the medical services at the previous copayment schedule since January 2001, the balance of hardships tips sharply in the favor of Plaintiffs. *See Rodde,* 357 F.3d at 999.

### 3. Serious Questions Raised/Likelihood of Success on the Merits

■■■ "Congress created the Medicaid program in 1965 by adding Title XIX to the Social Security Act." *Pharmaceutical Research and Mfrs. of America v. Walsh,* 538 U.S. 644, 650, 123 S.Ct. 1855, 1861, 155 L.Ed.2d 889 (2003). The Medicaid pro-

---

**4.** The Court notes that the State, through Defendant Rodgers, is the entity arguably most familiar with its own finances. However, Defendant Rodgers has not argued that it would face a financial burden if the Court enjoined AAC R9–22–711(E).

gram "authorizes federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons. In order to participate in the Medicaid program, a State must have a plan for medical assistance approved by the Secretary of Health and Human Services [ ]." *Id.*(*citing* 42 U.S.C. 1396a(b)). The State plan must define "the categories of individuals eligible for benefits and the specific kinds of medical services that are covered." *Id.*(*citing* 42 U.S.C. §§ 1396a(a)(10), (17)). The State "plan must provide coverage for the 'categorically needy' and, at the State's option, may also cover the 'medically needy.'" *Id.* The categorically needy group includes "individuals eligible for cash benefits under the Aid to Families with Dependent Children (AFDC) program, the aged, blind, or disabled individuals who qualify for supplemental security income (SSI) benefits, and other low-income groups such as pregnant women and children entitled to poverty-related coverage." *Id.* at 1861 n. 4. "The 'medically needy' are individuals who meet the nonfinancial eligibility requirements for inclusion in one of the groups covered under Medicaid, but whose income or resources exceed the financial eligibility requirements for categorically needy eligibility." *Id.*

Courts have found that "State participation in the Medicaid program is optional. If a state does elect to participate, it must comply with all provisions of the federal Medicaid statute and implementing regulations, except insofar as individual requirements may be waived by the federal government." *J.K. By and Through R.K. v. Dillenberg,* 836 F.Supp. 694, 696 (D.Ariz. 1993). Waiver of these individual requirements is accomplished under 42 U.S.C. § 1315. *See Beno v. Shalala,* 30 F.3d 1057, 1068 (9th Cir.1994). The Ninth Circuit has held that 42 U.S.C. § 1315 must be read in context and when interpreting a waiver under 42 U.S.C. § 1315, "we must, of course, 'follow the cardinal rule that a statute is to be read as a whole.'" *Beno,* 30 F.3d. at 1068(*quoting Conroy v. Aniskoff,* 507 U.S. 511, 514, 113 S.Ct. 1562, 1565, 123 L.Ed.2d 229 (1993)).

The parties agree that Plaintiffs are "medically needy" under the Medicaid framework. *See* [Dkt. 19; 32]. Reading 42 U.S.C. § 1315 as a whole, in conjunction with the provisions of 42 U.S.C. § 1396 *et seq.,* and considering the arguments raised by Plaintiffs and Defendants, Plaintiffs have raised serious questions and have demonstrated a likelihood success on the merits as to whether or not Defendants are required to follow, and if they are required follow, have they followed the procedures and guidelines set forth in 42 U.S.C. § 1396 *et seq.* and 42 U.S.C. § 1315.

### 4. Public interest

■ Ninth Circuit has found that:

[i]t is not only the harm to the individuals involved that we must consider in assessing the public interest. Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges. Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for any period of time. It would be unfortunate, but far less harmful to society, were the government to succeed in overturning the preliminary injunction but be unable to recoup all or a portion of the funds.

*Lopez,* 713 F.2d at 1437–1438.

Although Plaintiffs' and the class' access to medical services are not being terminat-

ed as they were in *Lopez*, AAC R9–22–711(E) does increase the copayments charged Plaintiffs and allows medical service providers to deny Plaintiffs · medical services if they are unable to pay. *See* AAC R9–22–711(E). Plaintiffs' lack of financial stability coupled with an increased copayment could act to deny Plaintiffs medical services. Plaintiffs have demonstrated that the public interest is in their favor. *See Rodde*, 357 F.3d at 994.

The Court will grant Plaintiffs' Motion for a Preliminary Injunction. [Dkt. 10].

**Notice to the Class**

On March 19, 2004, the Court granted Plaintiffs' Motion for Rule 23(b)(2) Class Certification and advised that "[t]he Court will direct notice to the class in the Court's Order ruling on Plaintiffs' Motion for a Preliminary Injunction." [Dkt. 12; 42].

Plaintiffs' Complaint seeks declaratory and injunctive relief. [Dkt. 1]. Accordingly, Plaintiffs' Motion for Class Certification sought certification of the class under Federal Rules of Civil Procedure, Rule 23(b)(2). [Dkt. 12]; *see* FED.R.CIV.P.23(b). The Ninth Circuit has held that "Rule 23(c) directs certain procedural protections in a class action depending upon the Rule 23(b) subsection under which the court certifies the action." *EEOC v. General Tel. Co. of Northwest, Inc.*, 599 F.2d 322, 334 (9th Cir.1979) *affirmed* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Prior to the December 2003 amendments to Rule 23(c), the Ninth Circuit found that "[w]hen an action is certified under Rule 23(b)(2) ... absent class members are not required to receive notice or to have the opportunity to opt-out of the suit." *Id.* Further, "due process requires only that the class members be adequately represented. The trial court may in its discretion in a class action certified under Rule 23(b)(2) direct that notice be given under Rule 23(d)." *Id.* In addition to the Court's equitable power under Rule 23(d)(2),

amended Rule 23(c)(2)(A) provides that: "[f]or any class certified under Rule 23(b)(1) or (2), the court may direct *appropriate notice* to the class." FED.R.CIV.P.23(c)(2)(A)(amended December 2003)(emphasis added). The advisory committee notes to the 2003 amendment provide in relevant part:

> The authority to direct notice to class members in a(b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a(b)(3) class action. There is no right to request exclusion from a(b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice. When the court does direct certification notice in a(b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the method of giving notice. Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all. Informal methods may prove effective. A simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice. The court should consider the costs of notice in relation to the probable reach of inexpensive methods.

Fed.R.Civ.P.23(c)(2)(2003 advisory committee notes).

The Court will direct the parties to submit a proposal or proposals, if they cannot agree, concerning the notice, if any, to be given to class members.

Accordingly,

IT IS ORDERED that Plaintiffs' Motion for a Preliminary Injunction [Dkt. 10] is GRANTED. Defendant Rodgers is enjoined pending further order of Court from: (1) imposing the mandatory copayments on prescription medications, doctors' visits and the use of the emergency room as set forth in AAC R9–22–711(E), and (2) allowing providers to deny medical services because of a participant's inability to pay the required copayments set forth in AAC R9–22–711(E).

IT IS FURTHER ORDERED that Plaintiffs are not required to post a bond.

IT IS FURTHER ORDERED that within **twenty days** from the date of this Order, Defendant Rodgers issue a letter to all Arizona Health Care Cost Containment System providers, including pharmacies, physicians and hospitals, notifying them of the preliminary injunction and that the increased copayments set forth in AAC R9–22–711(E) may not be charged or collected, and that they may not deny care or services to an individual eligible for such care or services on account of the individual's inability to pay the increased copayment set forth in AAC R9–22–711(E).

IT IS FURTHER ORDERED that within ten days of the date of this Order, the parties are directed to submit a proposal or proposals, if they cannot agree, concerning the notice, if any, to be given to class members.