SIERRA ON–LINE, INC.,
Plaintiff-Appellee,

v.

PHOENIX SOFTWARE, INC.,
Defendant-Appellant.

No. 83–2150.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1984.

Aug. 7, 1984.

Joseph A. Greco, Patricia Nicely Kopf, Fenwick, Stone, Davis & West, Palo Alto, Cal., for plaintiff-appellee.

Thomas R. Vigil, Barrington, Ill., for defendant-appellant.

Before WISDOM,* SKOPIL, and NORRIS, Circuit Judges.

WISDOM, Senior Circuit Judge:

This appeal arises out of a dispute over the right to use the term "Hi-Res Adventure" to identify home computer strategy games with high-resolution (hi-res) graphic displays.[1] The defendant, Phoenix Software, Inc. (Phoenix), appeals from an order denying reconsideration of a preliminary injunction, and also denying its motion for summary judgment. We affirm the preliminary injunction in favor of the plaintiff, Sierra On-Line, Inc. (Sierra), and dismiss the remainder of the appeal for lack of jurisdiction.

---

* The Honorable John Minor Wisdom, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. John Curtis Williams, a Sierra employee, explained that "high resolution graphics" are "pen line graphics, basically, using single pixel draw, which means one dot on the screen would be one pixel, and a high resolution graphic would be made up of numerous lines of one pixel". A game with high resolution graphics has illustrations that are more realistic or detailed than low-resolution, or block, graphics will permit. 3 Record at 32–33.

## I.

Sierra is a manufacturer of computer software. Since 1980 it has used "Hi-Res Adventure" (for which federal registration is pending) in connection with a number of computer games. In October 1982 Sierra sued to stop Phoenix from using the term in connection with Phoenix games. The district court issued a temporary restraining order on October 28, 1982, and a preliminary injunction on February 3, 1983.[2] In granting the injunction, the court held that "Hi-Res Adventure" is a "descriptive" term, that such a term can be a protected trademark only if it has acquired secondary meaning, and that Sierra had shown "a fair chance of success on the merits". Although the court found that Sierra had not yet produced sufficient evidence to support an ultimate finding of secondary meaning, the court granted the injunction because the balance of hardships strongly favored Sierra. Phoenix had voluntarily stopped using the term and would therefore not be injured by the injunction. The court did not explicitly discuss Phoenix's principal contentions: that "Hi-Res Adventure" was

a generic term incapable of trademark protection, and that Phoenix was protected by a "fair use" defense.

On February 14 Phoenix filed a motion for reconsideration and a memorandum of points and authorities in support of this motion, but did not file a formal "Notice of Motion", setting a date for hearing, until February 23. The motion for reconsideration did not assert any new grounds, but rather reasserted the "generic" and "fair use" defenses. The district court denied the motion for reconsideration on May 31. At that time the court also denied Phoenix's motion for summary judgment. On June 30 Phoenix filed its notice of appeal "from the Order denying the Motion for Reconsideration of Preliminary Injunction and the Motion for Summary Judgment entered in this action on the 31st day of May, 1983".[3]

## II.

 Sierra attacks our jurisdiction to hear this appeal, on the ground that Phoenix did not file its appeal within 30 days of the February 3 order granting the preliminary injunction, as required by ·Fed.R. App.P. 4(a)(1).[4] This time limit is jurisdic-

---

2. Hearing on the preliminary injunction was originally scheduled for November 8, 1982, within the ten-day period mandated by Fed.R. Civ.P. 65(b). Phoenix sought to delay the hearing and stipulated to the continuance of the hearing and of the temporary restraining order.

3. On October 7, 1983 the district court denied Phoenix's motion to dismiss for lack of venue; this Court denied Phoenix's motion to add the denial of the venue motion to this appeal. Phoenix's brief suggests that venue is "a corollary issue". We again decline to review the venue issue; the district court's denial of the motion is not an appealable order, and venue is not relevant to the issues presented by the appeal from the injunction.

4. The appeal was filed within 30 days of the order denying reconsideration. The governing statute gives this Court jurisdiction over "[i]nterlocutory orders ... granting, continuing, modifying, refusing, or dissolving injunctions, or refusing to dissolve or modify injunctions ...." 28 U.S.C. § 1292(a)(1) (1982). We cannot, however, take jurisdiction of this appeal as one from an "order ... refusing to dissolve" the earlier injunction. "The evident purpose of the statute is to permit review of orders made in response to claims of changed circumstances, not to ex-

tend indefinitely the time for appeal from a preliminary injunction by the simple device of seeking to vacate it or modify it." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure § 3924, at 88 (1977). As a general rule, therefore, the denial of a motion to modify or dissolve an injunction, or to reconsider a request for an injunction, will be appealable only if the motion raises new matter not considered when the injunction was first issued. Buckhanon v. Percy, 708 F.2d 1209, 1212–13 (7th ·Cir.1983), cert. denied, —— U.S. ——, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984); Winfield v. St. Joe Paper Co., 663 F.2d 1031, 1032 (11th Cir.1981) (per curiam); Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc., 579 F.2d 786, 789–91 (3d Cir.1978); Donaldson v. Pillsbury Co., 529 F.2d 979, 981 (8th Cir.1976) (per curiam), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); Stiller v. Squeez-a-Purse Corp., 251 F.2d 561, 563 (6th Cir.1958) (per curiam); Manousos v. Sarkis, 382 Mass. 317, 416 N.E.2d 179, 181–82 (1981). When jurisdiction is accepted, the Court will ordinarily review only the new matter raised in the motion for reconsideration, and not the merits of the underlying order. Buckhanon, 708 F.2d at 1213; Merrell-National, 579 F.2d at 791–92. Phoenix concedes that its motion for reconsideration presented no

tional. *Browder v. Director, Department of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978). Sierra acknowledges that a valid and timely motion to alter or amend the judgment,[5] made under Fed.R.Civ.P. 59(e), will toll the time for appeal. *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1247 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983); Fed.R.App.P. 4(a)(4)(iii). A Rule 59(e) motion must be served within ten days of the entry of judgment; if it is not timely served, it will not toll the time for appealing the judgment. *Cel-a-Pak v. California Agricultural Relations Board,* 680 F.2d 664, 666 (9th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982); *Hayward v. Britt,* 572 F.2d 1324, 1325 (9th Cir.1978).

■ Phoenix's motion for reconsideration did not state the particular rule under which it was filed. A motion for reconsideration, even if it raises no new grounds but "simply rehashes arguments heard at trial", may be made under Rule 59(e). *Clipper Exxpress,* 690 F.2d at 1249–50. We have consistently held that if a motion is served within ten days of judgment and it could have been brought under Rule 59(e), it tolls the time for appeal although it does not expressly invoke Rule 59. *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 811 (9th Cir.1981); *Mir v. Fosburg,* 646 F.2d 342, 344 (9th Cir.1980); *Whittaker v. Whittaker Corp.,* 639 F.2d 516, 520 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981); *Sea Ranch Association v. California Coastal Zone Conservation Commissions,* 537 F.2d 1058, 1061 (9th Cir.1976). The question in this case, therefore, is whether

the motion was served within ten days as required by Rule 59(e).

■ The injunction was entered on February 3, 1983. The tenth day following was a Sunday; therefore, Phoenix's motion had to be served by Monday, February 14. Fed.R.Civ.P. 6(a). On that day Phoenix filed and served a two-page document entitled "Defendant's Motion for Reconsideration of the Preliminary Injunction Entered on February 3, 1983" (Motion), and a ten-page "Memorandum of Points and Authorities in Support of Defendant's Motion for Reconsideration of the Entry of a Preliminary Injunction by this Court on February 3, 1983" (Memorandum), with an accompanying exhibit. The Motion specifically stated, "Defendant respectfully requests this Motion be set for a hearing on March 14, 1983". A notice of hearing was not filed, however, and a hearing was not scheduled for that date. On February 23 Phoenix filed its formal "Notice of Motion for Reconsideration" setting hearing for March 28.

Sierra argues that the motion was not complete until formal notice was filed, nineteen days after the injunction was entered. We disagree. Sierra's reliance on *Daily Mirror, Inc. v. New York News, Inc.,* 533 F.2d 53 (2d Cir.) (per curiam), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140 (1976) is misplaced. In that case the Court declined to treat a motion as a Rule 59(e) motion because the papers filed within ten days of judgment "on their face indicated that they did not constitute the complete motion" and did not deal with the merits of the motion for reconsideration. *Id.* at 56 n. 4. In the present case, by contrast, the only thing missing from the filings of Feb-

new matter. Were we to hold that appeal was timely only from the order denying reconsideration, we would be compelled either to dismiss the appeal or affirm on the narrow ground that no new matter was raised.

An appellate court may make an exception to the general rule, and decide to review the merits of the underlying order, when it perceives a substantial abuse of discretion or when the new issues raised on reconsideration are inextricably intertwined with the merits of the underlying order. *See Cerro Metal Products v. Marshall,*

620 F.2d 964, 972 (3d Cir.1980); *Fern v. Thorp Public School,* 532 F.2d 1120, 1126–30 (7th Cir. 1976). Because we hold that the February 14 motion tolled the time for appeal, we need not consider these exceptions, which require us to "look through the door [of jurisdiction] to see if we should open it", *Fern,* 532 F.2d at 1129 n. 6.

**5.** An order granting a preliminary injunction is a "judgment" under the Federal Rules because it is an appealable order. Fed.R.Civ.P. 54(a).

ruary 14 was a formal notice of hearing, and the Motion made clear that a hearing was requested. The Motion and Memorandum dealt thoroughly with the merits. In *Clipper Exxpress* we rejected an argument that *Daily Mirror* should be interpreted to require that every single document relevant to a Rule 59(e) motion be served within ten days. The Rules of Civil Procedure require only that a motion "shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought", Fed.R.Civ.P. 7(b)(1); shall contain a caption, Fed.R. Civ.P. 7(b)(2), 10(a); and shall be signed, Fed.R.Civ.P. 7(b)(3), 11. We held in *Clipper Exxpress* that a Rule 59(e) motion was timely filed although some supporting affidavits were filed after the ten-day period, because the papers that were filed on time satisfied the particularity requirement of Rule 7(b). 690 F.2d at 1248. Obviously the documents filed in the present case also met that requirement.

■■■ Sierra argues that formal notice was required by the district court's Local Rule 113(b).[6] By its very terms this rule refutes Sierra's argument. The rule does not provide that a motion is untimely unless formal notice is filed within the applicable time period. To the contrary, the rule specifically provides that a defectively noticed motion may be served and filed, but cannot be *heard* until properly noticed. In *Consortium of Community Based Organizations v. Donovan*, 530 F.Supp. 520 (E.D. Cal.1982), the district court denied a motion for summary judgment because the motion was never noticed. The summary judgment motion was made not as a separate motion, but rather as part of a memoran-

dum of points and authorities relevant to a different motion. *Id.* at 541. In the present case, Phoenix did file a motion; but assuming that the court would have been foreclosed from considering that motion until Phoenix filed formal notice, nevertheless the motion tolled the time for appeal. Even if a motion is inartfully drawn or "so defective that it could not properly be granted", it is still enough to toll the time for appeal. *Yanow v. Weyerhauser Steamship Co.*, 274 F.2d 274, 283 (9th Cir. 1959) (en banc), *cert. denied*, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). A contrary rule, requiring formal notice on the motion calendar within ten days, would mean that a party could file a Rule 59(e) motion only if it is able, in the first ten days after judgment, to schedule a satisfactory hearing date; if the party cannot find a satisfactory date within those ten days, it must forfeit its right to reconsideration and proceed immediately to appeal. Neither the Federal nor the Local Rules suggest any intent to condition the party's right to file a reconsideration motion on the state of the district court's calendar.[7]

■■■ Phoenix's notice of appeal is inartfully drafted. Because Phoenix advanced no new grounds in support of the motion for reconsideration, the only possible basis for that motion and for this appeal is Phoenix's contention that the underlying injunction was erroneously granted in the first place. The notice of appeal, however, states that the appeal is from the May 31 order denying reconsideration, rather than from the February 3 injunction. Sierra argues that the scope of our review is therefore restricted to considering

---

6. That rule provides:

"Notice. Except as otherwise ordered or allowed by the Court or Magistrate, all motions (except those made in the course of a hearing or trial) shall be noticed on the Motion Calendar of the assigned Judge or Magistrate. Notice of Motion and accompanying points and authorities, together with proof of service thereof, shall be filed with the Clerk of the Court by the moving party and set for hearing not less than 28 days after service of notice. Motions defectively noticed shall be filed but not set for hearing, and in such event the Clerk shall immediately notify the moving

party and all parties on whom the motion has been served that the motion has not been set for hearing."
E.D.Cal.R. 113(b).

7. Sierra suggests that timely notice is required because otherwise "a party could indefinitely toll its time to appeal an interlocutory order by filing a 'motion' which would never be set for hearing until it was properly noticed". This fear is unfounded. If a party unreasonably delayed its notice of hearing, the adverse party could move for dismissal or denial on that ground.

whether the district court should have granted the motion for reconsideration, and that we should not consider the underlying merits of the injunction. This would be correct if appeal from the injunction were untimely. But because Phoenix did preserve its right to appeal the February 3 injunction by filing a Rule 59(e) motion, we cannot deny Phoenix its right to an appeal simply because it did not explicitly mention the February 3 order in its notice of appeal. The overriding principle of the Federal Rules is to ignore insubstantial errors when they do not prejudice the other party or affect the substantive power of the court to review the decision. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). It is obvious here that Phoenix intended to appeal the underlying injunction; because such an appeal would have been timely, and because Phoenix's intent was clear, Sierra was not prejudiced by Phoenix's technical error. We will therefore construe the appeal to be from the underlying injunction. *See Baker v. Limber*, 647 F.2d 912, 919 (9th Cir.1981); *Munoz v. Small Business Administration*, 644 F.2d 1361, 1363–64 (9th Cir.1981); *McGowne v. Challenge-Cook Bros., Inc.*, 672 F.2d 652, 658–59 (8th Cir.1982); *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057, 1059 n. 1 (5th Cir.1981).

■■■ We therefore hold that we have jurisdiction to review the district court's order granting an injunction. Phoenix also asks us to review the order denying summary judgment. A denial of summary judgment is not ordinarily an appealable order. We have power, however, to review all issues underlying an injunction. *Fentron Industries, Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1304 (9th Cir.1982). Phoenix invites us to review the summary judgment denial, arguing that it involves the same issues as the injunction. We disagree and decline the invitation. We exercise our pendent jurisdiction in "the interests of judicial economy". *Id.* The salient issues on review of this injunction are the potential hardship to the parties and whether Sierra has a fair chance of success on the merits. Review of the summary judgment motion, in contrast, would call for conclusive resolution of the merits. The case is in the early stages of discovery; the record is not well developed. This Court will not attempt now to decide conclusively the merits of the case. Furthermore, review of the summary judgment denial would be pointless; since we conclude that the preliminary injunction was correctly granted, the denial of summary judgment, at this point in the litigation, was correct.

### III.

■■■ In determining whether to award a preliminary injunction, the trial court must consider the likelihood that the plaintiff will prevail on the merits and the possible harm to the parties from the granting or denial of the injunction. "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Benda v. Grand Lodge of the International Association of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). We have articulated the standards to be applied at the extremes of this test. "On the one end of the scale we require the moving party to show (1) probable success, and (2) the possibility of irreparable injury.... On the other end, the moving party is required to demonstrate (1) that serious questions are raised, and (2) that the balance of hardships are tipped sharply in his favor." *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1134 (9th Cir.1979). We have characterized a "serious question" as one as to which the moving party has "a fair chance of success on the merits". *Benda*, 584 F.2d at 315.

■■■ The grant of a preliminary injunction is a matter committed to the discretion of the trial judge; we reverse only if that discretion is abused or the decision is based on an erroneous legal standard or clearly erroneous findings of fact. *Apple Computer, Inc. v. Formula International*

*Inc.*, 725 F.2d 521, 523 (9th Cir.1984); *Miss Universe*, 605 F.2d at 1133–34 & 1133 n. 5. A preliminary injunction, of course, is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment. *See Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808–09 (9th Cir.), *cert. denied*, 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963); 1 J. Gilson, Trademark Protection & Practice § 8.07[1] (1984); Recent Development, *Probability of Ultimate Success Held Unnecessary for Grant of Preliminary Injunction*, 71 Colum.L.Rev. 165 (1971). Preliminary injunctions are appealable to protect litigants from the potential irreparable consequences of erroneously issued injunctions, not to give litigants a preliminary opportunity to appeal their cases on the merits. *See Carson v. American Brands, Inc.*, 450 U.S. 79, 83–86, 101 S.Ct. 993, 996–98, 67 L.Ed.2d 59 (1981); *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 178–82, 75 S.Ct. 249, 250–53, 99 L.Ed. 233 (1955); *Developments in the Law—Injunctions*, 78 Harv.L.Rev. 994, 1072 (1965); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure §§ 3920, 3921 (1977). We have the power to consider the merits and conclude the litigation, if that is appropriate. *Barrett v. Smith*, 530 F.2d 829, 830–31 (9th Cir.1975) (per curiam), *cert. denied*, 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976). But, as in this case, ordinarily our review comes in the early stages of litigation, when the record is insufficiently complete to allow a reliable resolution of the merits. Accordingly, generally we review the propriety of the *injunction*, not the ultimate merits of the case, unless it is clear that the litigation should be terminated. *See Sports Form, Inc. v. United Press International, Inc.*, 686 F.2d 750, 752–53 (9th Cir.1982); *Miss Universe*, 605 F.2d at 1132–33. Here we determine whether the trial judge has applied the correct standards and has exercised his discretion in such a way as to minimize the risk that a litigant will suffer an irreparable loss of legal rights in the period before final resolution of the dispute. *See* Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv.L.Rev. 525 (1978).[8]

In this case, Phoenix had voluntarily stopped using the disputed term "Hi-Res Adventure"; Sierra, on the other hand, stood to suffer from consumer confusion if Phoenix resumed use of the term. Phoenix has not challenged, either in its motion for reconsideration or in this appeal, the trial court's finding that the balance of hardships strongly favored Sierra. We must therefore determine whether the trial judge abused his discretion in concluding that Sierra had a "fair chance of success on the merits".

Phoenix contends that "Hi-Res Adventure" is a generic phrase and therefore unprotectible. The trial judge held that the phrase is descriptive and that to prevail on the merits Sierra will therefore have to show that the mark had acquired secondary meaning, that is, that the purchasing public generally believes that a product bearing the mark is in some way connected with Sierra or its products. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 350 (9th Cir.1979); *HMH Publishing Co. v. Brincat*, 504 F.2d 713, 717–19 (9th Cir.1974); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1182–85 (5th Cir.1980), *cert. denied*, 480 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). The court stated that Sierra had a fair chance of establishing secondary meaning, but would have to produce more evidence at trial to meet its burden of proof. Phoenix, asserting that a

---

**8.** Professor Leubsdorf criticizes the propensity of appellate courts to "retreat behind generalities about the trial court's discretion" in appeals from preliminary injunctions; he argues that appellate courts can advance the resolution of disputes "by expressing their views on the law when interlocutory appeals reach them". 91 Harv.L.Rev. at 557. Professor Leubsdorf recognizes, however, that "[c]ourts should ... avoid the merits when the facts are not clear enough to crystallize questions of law". *Id.* As we observed in *Sports Form*, it is often inappropriate for the appellate court to attempt to formulate views on the merits at an early stage of the litigation, "because the fully developed factual record may be materially different from that initially before the district court". 686 F.2d at 753.

descriptive mark may not be protected unless secondary meaning is shown, now argues that the trial judge cannot grant an injunction unless he first makes a finding of secondary meaning. This argument misperceives the purpose of a *preliminary* injunction. As pointed out earlier, the injunction is not a preliminary adjudication on the ultimate merits: it is an equitable device for preserving rights pending final resolution of the dispute. The district court is not required to make any binding findings of fact; it need only find probabilities that the necessary facts can be proved. In this case the trial court could reasonably conclude that Sierra had shown enough to support a preliminary injunction. Sierra produced correspondence from consumers stating that they understood "Hi-Res Adventure" to identify Sierra's products, and also produced trade publications that referred to Sierra's products only as "Hi-Res Adventures". The court could reasonably assume that more evidence in the same vein could be produced at trial. Accordingly, it could properly find that Sierra had a fair chance of success in proving that the mark was descriptive, not generic, and that the mark had acquired secondary meaning.

Phoenix also argues that it has an absolute "fair use" defense, making a preliminary injunction inappropriate. Phoenix bases this defense on section 33 of the Lanham Act, which provides that an incontestable registered trademark is not infringed if

> "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a trade or service mark ... of a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin ...."

15 U.S.C. § 1115(b)(4) (1982). By its terms this statutory defense applies only to registered trademarks that have become incontestable through passage of time. "Hi-Res Adventure" is not such a trademark. Assuming, as Phoenix argues, that a common-

law fair use defense exists,[9] the defense is neither absolute nor so clearly applicable to this case as to make a preliminary injunction inappropriate. Phoenix must show that it "is making good faith *non-trademark use*" of the phrase "Hi-Res Adventure". 1 J. Gilson, Trademark Protection and Practice § 4.03[3][c], at 4–27 (1984). It is not obvious that Phoenix's use was a non-trademark use, that is, that the term was used only to describe the product rather than to associate it with a manufacturer. Furthermore, Phoenix's good faith is in issue: its choice of the phrase "Hi-Res Adventure" when other phrases were available could indicate an intent to trade on Sierra's good will and product identity. *See id.*, at 4–27 to 4–28; 3A Callman, Unfair Competition, Trademarks and Monopolies § 21.26 (L. Altman 4th ed. 1983). The fair use defense, therefore, is not so obvious as to deny Sierra a fair chance of success.

In the absence of any suggestion that the preliminary injunction will harm Phoenix, the district court did not abuse its discretion. The order granting the preliminary injunction is AFFIRMED. In all other respects the appeal is DISMISSED.

---

**9.** *See Soweco*, 617 F.2d at 1190; *Robert B. Vance & Associates, Inc. v. Baronet Corp.*, 487 F.Supp. 790, 797 (N.D.Ga.1979); *see also Dallas Cowboys*

*Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205–06 (2d Cir.1979).