SMC PROMOTIONS, INC., et al.

v.

SMC PROMOTIONS, et al.

No. CV04–7107–JFW(VBKX).

United States District Court,
C.D. California.

Feb. 7, 2005.

John C. Kirkland, Charles T. Menzies, Greenberg Traurig LLP, Santa Monica, CA, for Plaintiffs.

John R. St. John, Steven W. Brennan, St. John Wallace Brennan & Folan LLP, Torrance, CA, for Defendants.

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [filed 12/27/04]**

WALTER, District Judge.

On December 27, 2004, Plaintiffs SMC Promotions, Inc., eMerchantClub, LLC ("EMC"), and Specialty Merchandise Corporation ("SMC") (collectively, "Plaintiffs") filed a Motion for Preliminary Injunction ("Motion"). On January 10, 2005, Defendants Official Site Builders Corporation

("OSB") and Mark Busnelli, Sr. ("Busnelli") filed an Opposition. On January 14, 2005, Plaintiffs filed a Reply. On January 24, 2005, Defendants filed a Supplemental Declaration of Steven W. Brennan in support of their Opposition. The Court heard oral argument on the matter on January 24, 2005, ordered the parties to file supplemental declarations, and scheduled a further hearing on the Motion for February 7, 2005. On January 26, 2005, Plaintiffs filed a Declaration of Randall Bishop ("Bishop Dec.") and on January 27, 2005, Plaintiffs filed a Declaration of Ronald Helvey ("Helvey Dec."). On February 2, 2005, Defendants filed a Declaration of Mark Busnelli, Sr. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the Court finds that this matter is appropriate for decision without further oral argument. The hearing calendared for February 7, 2005 is hereby vacated, and the matter taken off calendar. After considering the arguments made at the January 24, 2005 hearing, in addition to the moving, opposing, and reply papers, the supplemental declarations and the arguments therein, the Court rules as follows:

## I. *Facts and Procedural History*

On August 25, 2004, Plaintiffs filed a Complaint alleging claims for relief for: (1) Order Compelling Arbitration; (2) Copyright Infringement; (3) Cyberpiracy; (4) False Designation; (5) Common Law Unfair Competition; (6) Statutory Unfair Competition; (7) Interference with Prospective Economic Advantage; (8) Conversion; (9) Unjust Enrichment; and (10) Breach of Written Contract.[1] On October 5, 2004, Defendants filed their Answer to the Complaint and also filed Counterclaims for: (1) Libel, (2) Interference with Contractual Relations and (3) Injunctive Relief.

Plaintiff SMC, a company established in 1955, imports and distributes approximately 3,000 different products, including gift items, figurines and collectibles, through a network of more than 100,000 independent distributors, known as "members." SMC produces a 300–page catalog, entitled "World of Products," that features original, professional photographs and narrative descriptions of all of its products. The catalog is updated and copyrighted twice a year. SMC also produces several smaller specialty catalogs, including catalogs for jewelry or Christmas items. The same original photographs and narrative descriptions contained in SMC's catalogs also are available in a secure area of its primary website, SMCorp.com, that is accessible only to SMC members. The website is copyrighted separately from the catalogs. The catalogs and website contain copyright notices in statutory form.

SMC has used the "SMC" name since 1955 to identify its products and services, specifically the wholesale distribution of specialty merchandise and related services. SMC spends millions of dollars a year in connection with the advertising and promotion of the SMC name and the products and services offered by SMC. SMC's advertising includes radio and print advertisements, television infomercials, and other promotional materials and activities.

Plaintiff EMC is an affiliate of SMC that designs and constructs customized websites for SMC members. It advertises its services through its websites, eMerchantClub.com and SMCeCommerce.com. The websites sold by EMC enable SMC members to sell SMC products over the Internet. Each website offered by EMC is linked to the primary SMC website, SMCorp.com, and comes preloaded with all or a portion of SMC's copyrighted "World of Products" catalog. EMC has an exclu-

---

1. Plaintiffs' Motion is based on their Copyright, Lanham Act and conversion claims.

sive license to use SMC's "copyrighted materials to build and sell websites" (Bishop Dec., ¶ 18) and is the only company authorized to directly link to the copyrighted content on SMCorp.com. Declaration of Mark Schwartz, filed December 27, 2004, ¶ 16; Declaration of Joe Wu, filed December 27, 2004, ¶ 4. EMC is also authorized to use the "SMC" name to identify the websites it sells to SMC Members. Plaintiff SMC Promotions, Inc. ("SMC Promotions") is a telemarketing company whose two primary customers are its affiliates, SMC and EMC.

Defendant OSB was created in December 2003 and directly competes with EMC by marketing, constructing and selling to SMC members websites that enable those members to sell SMC products over the internet. OSB advertises its website construction services through its own websites, SMCPromotions.com, SellSMC.com and SMCForums.com.[2] In response to a demand from Plaintiffs, each of OSB's websites contains a fine-print disclaimer that it "is not owned, operated, endorsed or recommended by smcorp-Specialty Merchandise Corporation ™." Defendant Busnelli is a former SMC member, and is employed by OSB.

## II. *Legal Standard*

 "A preliminary injunction is appropriate where plaintiffs demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [their] favor." *Southwest Voter Registration Education Project v. Shelley,* 344 F.3d 914, 917 (9th Cir.2003) (*citing Clear Channel Outdoor Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir.2003) (*quoting Walczak v.*

*EPL Prolong, Inc.,* 198 F.3d 725, 731 (9th Cir.1999))). "The district court must also consider whether the public interest favors issuance of the injunction." *Id.* (*citing Fund for Animals, Inc. v. Lujan,* 962 F.2d 1391, 1400 (9th Cir.1992)). These are not separate tests, but the opposite ends of a single continuum. *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987) (*citing San Diego Committee Against Registration and the Draft v. Governing Board of Grossmont Union High School Dist.,* 790 F.2d 1471, 1473 n. 3 (9th Cir.1986)). However, "[u]nder any formulation of the test, the moving party must demonstrate a significant threat of irreparable injury." *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935 (9th Cir.1987) (*citing Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985)).

 "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (*quoting* 11A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, § 2948, pp. 129–30 (2d ed.1995)) (emphasis in *Mazurek* ). However, a preliminary "injunction is not a preliminary adjudication on the ultimate merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1423 (9th Cir.1984). "[T]he findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *see also Sierra On–Line,* 739 F.2d at 1423 (for preliminary relief, the court

---

**2.** A GenerationZ, LLC, the predecessor entity to OSB, registered the domain name SellSMC.com in June 2002, the domain name SMCForums.com in October 2002 and the domain name SMCPromotions.com in March 2003.

need only find a probability that necessary facts will be established, not that such facts actually exist).

## III. *Discussion*

### A. *Plaintiffs Have Demonstrated a Likelihood of Success on the Merits of Their Copyright Claim.*

■ Under the federal Copyright Act, the owner of a copyright in a pictorial or literary work, such as SMC's product photographs and descriptions, has the exclusive right to (1) reproduce the work, (2) prepare derivative works based on the work, (3) distribute copies of the work and (4) display the work publicly. 17 U.S.C. § 106. Anyone who violates any of these exclusive rights without authorization "is an infringer of the copyright." 17 U.S.C. § 501(a). Therefore, in order to prevail on the merits of a copyright infringement claim, the plaintiff must establish (1) its ownership of a valid copyright, and (2) that the defendant violated one of the exclusive rights of the copyright owner. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Ownership of a valid copyright registration is *prima facie* proof that the work is protected by copyright. 17 U.S.C. § 410(c); *see, also, Direct Diamond LLC v. Star Diamond Group, Inc.,* 116 F.Supp.2d 525, 527 (S.D.N.Y. 2000) (certificates of copyright registration are *prima facie* proof of validity of copyright). In this case, Plaintiffs have sought and obtained copyright registrations for both their "World of Products" catalogs and their SMCorp.com website (which contains original photographs and narrative descriptions of the products offered for sale in the "World of Products" catalog). Declaration of John C. Kirkland, filed December 27, 2004 ("Kirkland Dec."), Exs. C,

E. Therefore, Plaintiffs have established *prima facie* proof of the validity of their copyrights.

Plaintiffs contend that Defendants have engaged in unauthorized copying of Plaintiffs' copyrighted material because Defendants have "downloaded more than 3,000 original photographs and product descriptions from plaintiff's SMCorp.com website" and have "incorporated the entire copyrighted SMC catalog into 'knock-off' websites, that they now sell to SMC members." Motion, pp. 1, 3. In support of this contention, Plaintiffs offer evidence of statements appearing on one of OSB websites, promising prospective clients that "[w]e give you ALL the most recent products ... ALREADY in your web site when we build it." Motion, pp. 3–4; Kirkland Dec., Ex. J. The OSB website also informs prospective clients that they "get the ENTIRE CATALOG ... You don't get 40 products to start with or even 100 products, you get ALL the products, over 3000 products with quality pictures [and] full descriptions." [3] Kirkland Dec., Ex. J.

■ Busnelli concedes that OSB has directly copied SMC's copyrighted material from the SMCorp.com website on behalf of OSB's clients, but he denies that OSB retains any database of SMC product photographs or descriptions or that OSB sells websites that are preloaded with the entire SMC catalog. Declaration of Mark Busnelli, Sr., filed January 10, 2005 ("Busnelli Dec."), ¶¶ 15–16. According to Busnelli, OSB has uploaded to its clients' websites only the copyrighted SMC material associated with those products selected by the client. *Id.* Defendants argue that such uploading of SMC's product photographs and descriptions "has actually been licensed, authorized and approved by plain-

---

**3.** *See also* Helvey Dec., ¶ 3 (testimony of SMC member and potential OSB client that OSB promised him that his website would come

"pre-loaded with thousands of high-quality photographs and descriptions of SMC products").

tiffs as part of SMC's Membership Rules" and therefore does not constitute copyright infringement.[4] Opposition, pp. 9–10. Defendants correctly note that in order to allow its members to effectively market SMC products on the internet, SMC grants each member a limited license to use certain of the copyrighted product photographs and descriptions available through the "members only" sections of SMCorp.com. Specifically, Paragraph 10 of the SMC Membership Rules expressly permits each SMC member to "copy or use designated SMC product descriptions, product photographs and .jpg files on [the member's] website to advertise products [the member has] purchased from SMC for sale to [the member's] customers." Bishop Dec., ¶ 6; Declaration of John R. St. John in Support of Motion to Dismiss, filed October 5, 2004 ("St. John Dec."), Ex. E, ¶ 10.

OSB attempts to exploit this limited license by requiring its clients to enter into an agreement with OSB (the "OSB Client Agreement") (Busnelli Dec., Ex. C), which provides that the clients "grant [OSB] permission to use their rights actng [*sic*] as an agent on their behalf through their [SMC] Membership for the sole purpose of uploading their websites or assisting them with updating their website." OSB Client

Agreement, ¶ 8a. Defendants argue that Paragraph 8a of the OSB Client Agreement creates an agency relationship between OSB and its clients and therefore authorizes OSB to copy and use SMC's copyrighted material on the clients' behalf.

However, because of the extremely limited nature of the copyright license contained in Paragraph 10 of the SMC Membership Rules, the OSB Client Agreement does not protect or insulate OSB from Plaintiffs' claims of copyright infringement.[5] Although the SMC member is authorized to copy SMC's copyrighted material for use on the member's own website, the member "may not delegate or authorize any other person to do so, whether on [the member's] behalf or otherwise." St. John Dec., Ex. E, ¶ 10. Therefore, according to the express terms of the license, an SMC member may not engage a third-party vendor, such as OSB, to copy any copyrighted material from SMC's product catalog and upload it to the member's website.[6] SMC members that do so, even those that expressly make OSB their agent for such purposes, necessarily exceed the scope of the copyright license and thereby infringe on SMC's copyrights.[7] *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir.1989) ("A licensee infringes the owner's copyright if its use exceeds the

---

**4.** It is well-settled that a "license is a defense to infringement," *Oddo v. Ries*, 743 F.2d 630, 634 n. 6 (9th Cir.1984).

**5.** The supplemental Declaration of Mark Busnelli, Sr., filed February 2, 2005 ("Supp. Busnelli Dec."), attaches evidence suggesting that Paragraph 10 (and the copyright relied on by Defendants) may not have always been included in the SMC Membership Rules. Supp. Busnelli Dec., ¶ 2. However, Defendants' own evidence indicates that Paragraph 10 was part of the Membership Rules at least as of September 27, 2004. St. John Dec., ¶ 10. In addition, Randall Bishop, SMC's General Manager, states that the current version of the Membership Rules contains Paragraph 10. Bishop Dec., ¶ 2; Ex. A. Defendants' attempt to question the history of Paragraph 10 does not alter the Court's conclusion that OSB is

not entitled to copy any of Plaintiffs' copyrighted material.

**6.** In addition, any attempt by SMC members to transfer to OSB their rights under the copyright license without SMC's authorization fails as a matter of law. *Gardner v. Nike, Inc.*, 279 F.3d 774, 780–81 (9th Cir.2002) (licensee not permitted to transfer rights under copyright license "absent explicit contractual language to the contrary"). The evidence submitted by Plaintiffs demonstrates that SMC has not consented to any such transfer. In fact, as a result of Plaintiffs' designation of OSB as a "Proscribed Merchant," the SMC Membership Rules prohibit SMC members from doing business with OSB. St. John Dec., Ex. E, ¶ 7; Bishop Dec., ¶ 13.

**7.** However, according to the Declaration of Randall Bishop, the SMC Membership Rules do permit the following:

scope of its license"); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 512 (9th Cir.1985) (affirming finding that copyright licensee whose use of the copyrighted material exceeded the scope of the license was liable for infringement). Accordingly, because Plaintiffs have demonstrated that they own valid copyrights to material that Defendants copied without authorization, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of their copyright infringement claim.[8]

**B. Plaintiffs Have Demonstrated a Likelihood of Success on the Merits of Their Claim Under Section 43(a) of the Lanham Act.**

■ Section 43(a) of the Lanham Act prohibits false representations about the origin of source or manufacture of goods through the use of another's trade name or trademark, either registered or unregis-tered.[9] 15 U.S.C. § 1125(a)(1); *see, e.g., Accuride International, Inc.,* 871 F.2d at 1534 (involving false designation of origin claim for allegedly wrongful use of trade name). A Section 43(a) false designation of origin claim is "recognized, with regard to unregistered marks, as the equivalent of a claim for trademark infringement." *Union Mfg. Co., Inc. v. Han Baek Trading Co., Ltd.,* 763 F.2d 42, 47–48 (2d Cir.1985). Therefore, in order to state an infringement claim under Section 43(a), Plaintiffs must demonstrate (1) a valid and protectable trademark or trade name and (2) the likelihood of confusion as to the origin of Defendants' goods or services. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir.1985).

**1. Plaintiffs Have a Valid Trademark[10]**

■ Although Defendants do not contest the validity of Plaintiffs' trademarks,

Members may choose to build their own websites using off-the-shelf software ... which generally [has] point-and-click interfaces to add text or pictures to website templates included with the program....Members may host their websites with any commercial hosting company they choose (provided that it is not one of the few companies on our Proscribed Merchants list, which is discussed below). Members may use a website hosting company ... that provides online website templates with a step-by-step process to add product photographs and descriptions.... Members may also have a website designed and built for them by a third party website designer.... The member may then download [SMC's] .jpg files from the Members Only section of SmCorp.com and paste them into the website [that he or she built or] that was designed for them.

Bishop Dec., ¶¶ 7–9. In response to Plaintiffs' argument (with which the Court agrees) that SMC members who exceed the scope of the copyright license are themselves infringers, Busnelli states that OSB has agreed, at least temporarily, that on a going-forward basis, "even if an SMC member asks OSB to down-load the SMC product images and descriptions into the member's website, it will not do so." Supp. Busnelli Dec., ¶ 4.

8. Because the Court is enjoining Defendants' use of Plaintiffs' copyrighted works as a violation of the Copyright Act, the Court need not consider if Defendants' use of Plaintiffs' copyrighted works also constitutes conversion under California law.

9. In this case, Plaintiffs use SMC as both a trade name and a trademark. While technically different, because Section 43(a) of the Lanham Act protects both trade names and trademarks and the likelihood of confusion analysis applied to both is the same, the distinction is not important. *See, e.g., Accuride International, Inc. v. Accuride Corporation,* 871 F.2d 1531, 1534 (9th Cir.1989) ("As a practical matter, courts are rarely called upon to distinguish between trade names, trademarks and service marks. Trade names often function as trademarks or service marks as well.").

10. On January 9, 2005, Defendants announced on their SMCForums.com website

they argue that the "SMC" mark is "of the weakest sort." [11] Opposition, p. 6. While the strength of the mark is generally an important factor in analyzing claims under Section 43(a) of the Lanham Act, the Ninth Circuit has found that in cases involving internet commerce, the strength of the mark is not "of much importance ... regardless of whether either logo had herculean strength." *GoTo.com, Inc.*, 202 F.3d at 1208. Nevertheless, the fact that Plaintiffs spend millions of dollars each year on advertising and promotion in multiple media outlets, as well as Plaintiffs' continuous use of the SMC mark for nearly fifty years demonstrate that Plaintiffs have a strong mark. *See, e.g., Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir.1988) (evidence that Century 21 had expended several million dollars in advertising and that the mark had been used in connection with real estate sales in excess of one billion dollars relevant to finding that "Century 21" is a strong mark).

■ Defendants also argue that Plaintiffs have abandoned the "SMC" mark. Under the Lanham Act, a trademark is deemed abandoned "when its use has been discontinued with intent not to resume such use" or when the "conduct of the owner, including acts of omission as well as commission," causes the mark to become generic. 15 U.S.C. § 1127. In support of their abandonment argument, Defendants have submitted evidence of searches conducted on Yahoo and Google, two popular internet search engines, for the term

"SMC." Declaration of Steven W. Brennan, filed January 10, 2005, Exs. A, C. According to Defendants, such searches yield "literally hundreds of business [*sic*] that are unrelated to plaintiffs, not to mention many that ... [are] competing with plaintiff SMC." Opposition, p. 6. Defendants argue that some or all of these businesses infringe on Plaintiffs' trademark and "because plaintiffs have done nothing about such misappropriations of their trademarks, they have thereby forfeited any rights that otherwise may have existed." *Id.* However, the vast majority of the businesses listed in Defendants' search results appear to be using the "SMC" mark either (1) in a completely different market from that occupied by Plaintiffs' businesses, or (2) merely to mention the "SMC" mark for purposes of comparing their goods or services with SMC's. The fact that SMC may have "done nothing" about such uses of the "SMC" mark does not suggest that it has abandoned the mark because the evidence submitted by Defendants does not demonstrate "misappropriations" of SMC's trademark. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir.1999) ("there may be ... no trademark infringement—if the alleged infringer is in ... a wholly different industry"); *Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 855 (C.D.Cal.1985) (use of a competitor's trademark in comparative advertising does not give rise to trademark infringement).

■ Even if Defendants' evidence demonstrated third-party infringement of

that they have voluntarily agreed to stop using the "SellSMC" name. Reply Declaration of John C. Kirkland, filed January 14, 2005 ("Kirkland Reply Dec."), Ex. C. In addition, at the January 24, 2005 hearing, Defendants' counsel represented that Defendants no longer do business under the names "SellSMC," "SMC Promotions" or "SMC Forums," have ceased using the domain names SellSMC. com, SMCPromotions.com and SMCFo-

rums.com, and have no objection to the granting of a preliminary injunction as to Plaintiff's trademark claims.

11. Plaintiff's Complaint alleges that the relevant trade name and trademark is "SMC" and that the relevant market is "the wholesale distribution of specialty merchandise and the providing of related business services." Complaint, pp. 4–5.

Plaintiffs' trademark, a trademark holder "is not required to act immediately against every possible infringing use to avoid a holding of abandonment. Such a requirement would unnecessarily clutter the courts." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018 n. 1 (9th Cir.1985).[12] Moreover, the record demonstrates that contrary to Defendants' assertions, Plaintiffs have in fact been diligent in defending their trademark by (a) sending out cease-and-desist demands to alleged infringers and (b) prosecuting actions against those that do not comply with such demands. Reply, p. 6; Kirkland Reply Dec., ¶¶ 6–10.

## 2. Plaintiffs Have Demonstrated Likelihood of Confusion

■ "To prevail on a claim under the Lanham Act, [the plaintiff] must establish that [the defendant] is using a mark [or name] confusingly similar to its own ..." *GoTo.com, Inc. v. Walt Disney Company*, 202 F.3d 1199, 1205 (9th Cir.2000) (holding that plaintiff's "GoTo" website logo was infringed by defendant's "Go Network" logo, where both logos consisted of white capital letters in an almost identical font rendered on a green circle, and the circle was matted by a square yellow background). To determine likelihood of confusion in the Ninth Circuit, the Court examines the eight factors found in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979):(1) the strength of plaintiff's mark/name; (2) the relatedness of the goods; (3) the similarity of the marks/names; (4) evidence of actual confusion; (5) the marketing channels used by the

parties; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the mark/name; and (8) the likelihood of expansion of the product lines. *See, also, Accuride International, Inc.*, 871 F.2d at 1533 (holding that same likelihood of confusion analysis applies to Section 43(a) claims involving trade names as those involving trademarks). However, in the context of the internet, the Ninth Circuit has found that three of the *Sleekcraft* factors, or the "internet trinity," are most important in deciding likelihood of confusion: (1) the similarity of the marks/names; (2) the relatedness of the goods or services; and (3) the parties' simultaneous use of the internet as a marketing channel. *Interstellar Starship Services, Limited v. Epix*, 304 F.3d 936, 942 (9th Cir.2002). If the internet trinity suggests confusion is likely, the other factors would have to weigh strongly against a likelihood of confusion to avoid a finding of infringement. *Id.*

■ In this case, the factors in the internet trinity weigh in favor of a finding of infringement. First, the marks used by Defendants are confusingly similar to Plaintiffs' mark. All three of the domain names used by Defendants, SellSMC.com, SMCForums.com, and SMCPromotions.com, incorporate the entire "SMC" mark, adding only the generic terms "sell," "forums" and "promotions." "A subsequent user may not avoid likely confusion by appropriating another's entire mark and adding descriptive or non-distinctive matter to it." 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair*

---

**12.** Defendants also argue that because Plaintiffs took no legal action for several months after Defendants rejected a cease-and-desist demand sent by Plaintiffs' counsel, Plaintiffs' claims are barred by laches. However, laches does not apply in this case for at least two reasons. First, laches is not a bar to a claim against a deliberate infringer "who knew of

plaintiff's asserted rights." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.06, at 12–125. Second, where a plaintiff brings an action within the relevant statute of limitations, there is a "strong presumption that laches is inapplicable." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir.2002).

*Competition* § 23:50 (4th ed.2004). The use of such confusingly similar marks in Defendants' domain names and on their websites creates initial interest confusion, regardless of Defendants' use of a disclaimer on their websites that they are not "owned, operated, endorsed or recommended" by Plaintiffs. *See, e.g., Planned Parenthood Federation of America, Inc. v. Bucci,* 1997 WL 133313, 42 U.S.P.Q.2d 1430, 1441 (S.D.N.Y.1997) ("Due to the nature of Internet use, defendant's appropriation of plaintiff's mark as a domain name and home page address cannot adequately be remedied by a disclaimer. Defendant's domain name and home page address are external labels that, on their face, cause confusion among Internet users and may cause Internet users who seek plaintiff's web site to expend time and energy accessing defendant's web site."); *OBH, Inc. v. Spotlight Magazine, Inc.,* 86 F.Supp.2d 176, 190 (W.D.N.Y.2000) (holding that a disclaimer on a website does not cure initial interest confusion because web users seeking plaintiff's "The Buffalo News" website who arrive at defendant's thebuffalonews.com website "cannot help being confused—even if only momentarily.").

Second, Defendants offer a service that is related to and directly competing with the service offered by Plaintiffs. In fact, Defendants concede that they are "in direct competition" with Plaintiff EMC. Opposition, p. 6. *See. e.g., Brookfield Communications, Inc.,* 174 F.3d at 1055–57

(holding that if the marks are virtually identical and are used with "identical products or services likelihood of confusion would follow as a matter of course" and the "use of similar marks to offer similar products accordingly weighs heavily in favor of a likelihood of confusion").

Third, both Plaintiffs and Defendants use the internet as a major channel for marketing and advertising. *Id.* at 1057 (finding that this is "a factor that courts have consistently recognized as exacerbating the likelihood of confusion.").[13] Because the internet trinity suggests confusion between Plaintiffs' marks and Defendants' marks is likely, and having examined the remaining *Sleekcraft* factors and finding that they do not weigh strongly against a likelihood of confusion, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of on their claim under Section 43(a) of the Lanham Act.[14] *See, e.g., GoTo.com, Inc.,* 202 F.3d at 1207 (finding confusion likely where internet trinity of *Sleekcraft* factors indicated a likelihood of confusion and stating that "[w]e discuss the remaining *Sleekcraft* factors only because the parties raised them.").

## C. Plaintiffs Have Demonstrated Irreparable Injury.

■ "When a plaintiff is likely to succeed on the merits of a copyright infringement claim, irreparable harm is presumed." *Elvis Presley Enterprises, Inc. v. Passport Video,* 349 F.3d 622, 627 (9th

---

13. In addition, Plaintiffs have submitted evidence of actual consumer confusion. Ronald Helvey, an SMC member, testified that he decided to hire OSB to build him a website because he "thought that there were the regular builder of websites for SMC." Helvey Dec., ¶ 2.

14. Because the Court is enjoining the use of SellSMC.com, SMCForums.com, and SMCPromotions.com by Defendants as viola-

tions of Section 43(a) of the Lanham Act, the Court need not consider if Defendants' use of these domain names is also a violation of Section 43(d) of the Lanham Act, also known as the Anti–Cybersquatting Protection Act. Moreover, because the Court is enjoining Defendants' use of the SMC name as a violation of Section 43(a) of the Lanham Act, the Court need not consider whether Defendants' use of the SMC name also constitutes conversion under California law.

Cir.2003); *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir.1998) (holding that because a showing of likelihood of success on the merits raises a presumption of irreparable injury, the plaintiff need only show likelihood of success on the merits for the preliminary injunction to issue); *Apple Computer, Inc. v. Formula International Inc.*, 725 F.2d 521, 525 (9th Cir. 1984) ("A showing of a reasonable likelihood of success on the merits in a copyright infringement claim raises a presumption of irreparable harm"). In addition, "[i]f a plaintiff has demonstrated a likelihood of prevailing on the merits of [his] trademark infringement or unfair competition claims, irreparable injury may be presumed." *General Motors Corporation v. Let's Make A Deal*, 223 F.Supp.2d 1183, 1197 (D.Nev.2002) (*citing Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n. 3 (9th Cir.1989)); *Philip Morris Incorporated v. Allen Distributors, Inc.*, 48 F.Supp.2d 844, 854 (S.D.Ind.1999) (irreparable injury presumed when likelihood of success on the merits of a Lanham Act claim is established). In this case, because Plaintiffs have demonstrated a likelihood of success on the merits of their copyright and Section 43(a) claims, irreparable injury is presumed.

Moreover, Plaintiffs have further demonstrated that they have expended a substantial amount of money, time and effort to establish the goodwill that they enjoy in the wholesale specialty product distribution marketplace and that such goodwill is negatively impacted by Defendants' use of the "SMC" mark. Specifically, Plaintiffs have submitted evidence that SMC members have purchased Defendants' services believing that they were affiliated with SMC, only later to complain to SMC about Defendants. Kirkland Dec., Ex. N; Helvey Dec., ¶¶ 2, 5–8. The Ninth Circuit has recognized that "intangible injuries, such as damage to ... goodwill, qualify as irreparable harm." *Rent–A–Center, Inc. v.*

*Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir.1991); *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F.Supp.2d 1154, 1164 (C.D.Cal. 2000) (finding irreparable injury where computer sales company using "nissan.com" was "trading on plaintiffs' goodwill and diverting potential Nissan car customers to other websites"). Accordingly, the Court finds that Plaintiffs have demonstrated that they will suffer irreparable injury in the absence of a preliminary injunction.

### D. Public Policy Weighs In Favor of Issuing the Preliminary Injunction.

██ Before issuing a preliminary injunction, the Court must determine "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Rosen Entertainment Systems, LP v. Eiger Vision*, 343 F.Supp.2d 908, 921 (C.D.Cal.2004). On a Lanham Act claim, the Ninth Circuit has held that public policy favors granting an injunction when there is a likelihood of consumer confusion. *See, Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 300–02 (9th Cir.1979), *cert. denied* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). As discussed above, Plaintiffs have demonstrated a likelihood of success on the merits on the question of consumer confusion under their Lanham Act claim. Accordingly, public policy considerations weigh in favor of granting Plaintiffs' request for a preliminary injunction on their Lanham Act claim.

With respect to Plaintiffs' copyright claim, a preliminary injunction is in the public interest because "copyrighted works must be protected as an incentive for people to create new works." *Gable–Leigh, Inc. v. North American Miss*, No. CV 01–01019 MMM, 2001 WL 521695, at *14

(C.D.Cal. April 13, 2001) (granting motion for preliminary injunction). *See also Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) ("[I]t should not be forgotten that the Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas"); *Zacchini v. Scripps–Howard Broad. Co.*, 433 U.S. 562, 576, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) ("The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in 'Science and useful Arts' "). " Accordingly, public policy considerations weigh in favor of granting Plaintiffs' request for a preliminary injunction."

## IV. *Conclusion*

For all the foregoing reasons, Plaintiffs' Motion is GRANTED. The Court declines to sign the Proposed Preliminary Injunction lodged by Plaintiffs on December 27, 2004 because it is vague and exceeds the scope of this Order. Counsel are ordered to meet and confer and agree to the terms of a preliminary injunction in accordance with this Order and the amount of a bond to be posted by Plaintiffs pursuant to Federal Rule of Civil Procedure 65(c). Counsel shall lodge the agreed upon preliminary injunction by February 11, 2005. If Counsel are unable to agree on a preliminary injunction, they shall file by February 18, 2005 a Joint Statement setting forth the agreed upon terms and their respective positions regarding the disputed terms.

IT IS SO ORDERED.

The Clerk shall serve a copy of this Minute Order on all parties to this action.